## S05A1123. RAMOS v. TERRY.
### (622 SE2d 339)

BENHAM, Justice.

We granted petitioner Roberto Ramos's request for a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus in order to determine whether Ramos was denied a full and fair habeas hearing due to inadequacies of the interpreter used at the habeas hearing.

Ramos was convicted of aggravated assault and reckless driving in the Superior Court of Clayton County in April 2002 and sentenced to eleven years' imprisonment. Following the affirmance of the judgment of conviction by the Court of Appeals in an unpublished opinion (*Ramos v. State*, 260 Ga. App. XXVI) (2003)), Ramos filed a petition for a writ of habeas corpus in which he contested the sufficiency of the indictment and the sufficiency of the evidence and contended his trial counsel had rendered ineffective assistance of counsel. After the habeas court set a date for a hearing to be held at the prison where Ramos was incarcerated, Ramos filed a motion seeking the appointment of an interpreter to serve at the hearing because Ramos, of Mexican descent, was not an American citizen and could not speak or understand English well.[1]

---

[1] The services of an interpreter were used during Ramos's Clayton County trial. The lawyer

No interpreter was appointed prior to the hearing and the habeas judge first became aware of the motion for an interpreter when Ramos mentioned it at the commencement of his hearing, four months after the motion had been filed. The habeas court then attempted to converse with Ramos in English and obtained information about Ramos's English-speaking capabilities from Ramos's bilingual trial counsel, who was present as a witness in the habeas hearing. After being informed the Superior Court of Tattnall County had a Spanish interpreter it used when needed but the interpreter's whereabouts were unknown and noting the distance trial counsel had traveled to be present, the habeas court recessed the hearing in order that an interpreter might be found. After a 100-minute recess, a prison employee who spoke Spanish was presented to the court and was administered an oath whereby the employee swore to translate correctly English into Spanish and Spanish into English. The 37-page transcript of the hearing reflects the interpreter and Ramos repeatedly conferred with one another, after which the interpreter gave a summary of the conversation to the court; the court told the interpreter several times she was not to have a conversation with Ramos but was just to repeat the questions and answers; and the sole witness, the attorney who was Ramos's trial and appellate counsel, was directed on numerous occasions to slow down his responses to questions so that the interpreter could keep up. The habeas court concluded the hearing with an oral ruling which denied the petition for a writ of habeas corpus.

1. In his application for certificate of probable cause, Ramos contends, among other things, that the interpreter was not of Mexican descent and spoke a different dialect of Spanish than he, causing a communications gap that resulted in the termination of the habeas hearing before Ramos presented all of his grounds for relief.

Ramos's petition sought habeas relief on the ground his liberty was being restrained by virtue of a sentence imposed on him by a state court of record following proceedings in which he allegedly was denied constitutionally-guaranteed rights. Accordingly, the adjudication of his habeas petition had to be preceded by a statutorily-required hearing (OCGA § 9-14-47; *Rickett v. State,* 276 Ga. 609 (2) (581 SE2d 32) (2003)), which had to comport with the fundamental requirements of due process — notice and opportunity to be heard (see *Armstrong v. Manzo,* 380 U. S. 545, 550 (85 SC 1187, 14 LE2d 62) (1965)), as well as the petitioner's right to meaningful access to the courts and meaningful communications with the courts. *Howard v.*

---

who represented Ramos at trial testified he volunteered to take the case because the attorney "had some Spanish skills."

*Sharpe*, 266 Ga. 771 (1) (470 SE2d 678) (1996). See also *Augustin v. Sava*, 735 F2d 32, 37 (2nd Cir. 1984) ("The very essence of due process is a 'meaningful opportunity to be heard.' ").

In an effort to secure the rights of non-English-speaking persons in judicial proceedings, this Court exercised its inherent power "to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner" (*Garcia v. Miller*, 261 Ga. 531 (3) (408 SE2d 97) (1991)), and its constitutional authority to adopt rules providing for "the speedy, efficient, and inexpensive resolution of disputes and prosecutions" (1983 Ga. Const., Art. VI, Sec. IX, Par. I), to promulgate rules establishing a statewide plan for the use of interpreters in proceedings involving non-English speakers before any court or grand jury hearing in Georgia. Briefly summarized, when a party or witness to a covered proceeding requests an interpreter, the rules on use of interpreters envisage a pre-hearing examination of the non-English-speaking person by the court and appointment of an interpreter upon a judicial determination that the requestor does not understand and speak English well enough to participate fully in the proceeding. Use of Interpreters for Non-English Speaking Persons, Appendix A, Uniform Rule for Interpreter Programs, Sec. I (A), (D). A court should make a "diligent effort" to appoint an interpreter certified by the Georgia Commission on Interpreters;[2] if one is not available, the court is to give preference to a person on the list of registered interpreters.[3] Commentary to Rule I, Use of Interpreters for Non-English Speaking Persons; Appendix B, Powers and Duties of the Georgia Commission on Interpreters, Sec. X. Where, as was the situation in the case at bar, neither a certified nor a registered interpreter is available, the court "should weigh the need for immediacy in conducting a hearing against the potential compromise of due process, or the potential of substantive injustice, if interpreting is inadequate." Commentary to Rule I, Use of Interpreters for Non-English Speaking Persons. If the court decides to proceed with a less qualified interpreter, the court should give the less

---

[2] A certified interpreter is one who has successfully completed an oral and written exam demonstrating competence in interpreting and who has completed required continuing education that provides familiarity with the Georgia court system and the roles and responsibilities of interpreters within that system. Federal certification or certification by states participating in the national Consortium for State Court Interpreter Certification may be recognized in lieu of a Georgia-administered examination. Use of Interpreters for Non-English Speaking Persons, Appendix B, Powers and Duties of the Georgia Commission on Interpreters, Sec. IV.

[3] A registered interpreter is one who has completed mandatory classroom training and has passed a written exam demonstrating familiarity with the Georgia court system and the roles and responsibilities of interpreters within that system, or is one who interprets a language for which no exam is given. Use of Interpreters for Non-English Speaking Persons, Appendix B, Powers and Duties of the Georgia Commission on Interpreters, Sec. V.

qualified interpreter specified written or oral instructions on basic rules of interpreting in a judicial setting (Appendix A, Sec. I (F)), and when a non-professional interpreter is used, the court should, on the record, "personally verify a basic understanding of the interpreter's role. . . ." Commentary to Appendix A, Uniform Rule for Interpreter Programs, Sec. I (F). Every interpreter who serves in a Georgia court "shall agree in writing to comply with the Code of Professional Responsibility for Court Interpreters." Rule VI (E), Use of Interpreters for Non-English Speaking Persons.

In the case at bar, the habeas court quickly determined Ramos was in need of an interpreter and sought the services of an interpreter who had a history of satisfactory participation in court proceedings. When that interpreter proved unavailable, the habeas court, concerned about inconvenience to the sole witness, resorted to using a prison employee whose qualifications to serve as an interpreter were her ability to speak Spanish and her presence. No information about her background in language skills, e.g., whether she was a native of a country where Spanish is spoken, whether she was fluent in English, whether she previously had translated in a court proceeding, whether she had taken and passed the interpreter exams administered by Georgia or another state, whether the Spanish she spoke was compatible with the Spanish spoken by Ramos,[4] and her professional standing in the interpreter community, was obtained before the habeas court decided to appoint her as the interpreter in this matter. Compare *Choi v. State*, 269 Ga. 376 (3) (497 SE2d 563) (1998), and *Holliday v. State*, 263 Ga. App. 664, 668 (588 SE2d 833) (2003). Following her appointment, the prison employee/interpreter was not given the suggested instructions on interpreting in a courtroom setting and her understanding of the interpreter's role was not verified, and she was not required to agree in writing to comply with the court interpreters' code of professional responsibility.

The use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English. *State v. Douangmala*, 253 Wis. 2d 173, 191-192 (646 NW2d 1) (2002). The competence of an interpreter is a matter for the trial court and that determination is

---

[4] In *State v. Velasquez*, 2004 WL 295227 (Wash. App. 2004), the Court of Appeals of Washington noted the importance of nuance in translation by repeating a comment made by a bilingual trial judge reprising an incident from his years as a practicing attorney:

> I had many cases involving disputed issues of translation. . . . My favorite story was one where a woman was overcome by fumes in a potato factory. And she testified . . . [in Spanish] "I was overcome by fumes." But that was translated by someone who went to the Royal Academy in Spain as, "I was drunk in the factory," which would be an alternate meaning, but a totally different meaning, that she was drunk on the job as opposed to being overcome by these fumes.

subject to appellate review for abuse of discretion. See *LaCount v. State*, 237 Ga. 181 (2) (227 SE2d 31) (1976). A court abuses its discretion when it selects an interpreter who is not qualified, sworn, and impartial. *Gopar-Santana v. State*, 862 S2d 54 (Fla. App. 2003). We conclude it is an abuse of discretion to appoint someone to serve as interpreter who is neither certified nor registered as an interpreter without ensuring that the person appointed is qualified to serve as an interpreter, without apprising the appointee of the role s/he is to play, without verifying the appointee's understanding of the role, and without having the appointee agree in writing to comply with the interpreters' code of professional responsibility.

2. The Warden points out Ramos waived any concern he had about the interpreter's abilities by failing to object at the habeas hearing. The failure to interpose a timely objection to an interpreter's qualifications constitutes a waiver of the issue on appeal. *Duran v. State*, 274 Ga. App. 876 (4) (619 SE2d 388) (2005). Accordingly, the judgment of the habeas court denying relief is affirmed.

*Judgment affirmed. All the Justices concur, except Hines, J., who concurs in Division 2 and in the judgment.*

DECIDED NOVEMBER 21, 2005.

Roberto Ramos, *pro se.*

*Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.

*Sarah L. Gerwig-Moore, Leigh S. Schrope,* amici curiae.