A09A1271. LING v. THE STATE.
(686 SE2d 356)

DOYLE, Judge.
Following a jury trial, Annie Ling was convicted of cruelty to a child. She appeals the denial of her motion for new trial in a single enumeration of error, arguing that her trial counsel provided ineffective assistance of counsel by failing to secure an interpreter for her both before and during the trial. We affirm, for reasons that follow.

Viewed in favor of the verdict,[1] the record shows that the Spalding County Department of Family and Children Services ("DFCS") received a referral alleging that Ling had physically abused her children, Catherine and Christopher Ling. In January 2007, Sharon Gilmore, a social services worker for DFCS, interviewed Ling and her husband, Dennis Ling, at the restaurant where they worked. Somer Bales, a juvenile investigator for the City of Griffin Police Department, and Jeff Mason, who was also with the Griffin Police Department, were present as well. With the Lings' permission, Gilmore went to their home to see the children, accompanied by Bales. When the two women arrived at the Ling residence, the children's grandmother, who did not speak English, initially denied them entry into the house, but she ultimately allowed them to

---

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

come in after she spoke with Ling on the telephone.

Ling, who had subsequently arrived home, permitted Gilmore and Bales to inspect Catherine, who was sleeping in a locked room. Gilmore and Bales observed that the child (who was 22 months old) had visible bruising on both sides of her face, the bridge of her nose, the backs of her legs, her ankles, her feet, and her back. Catherine also had burns on both of her hands, was very thin, and appeared unhealthy. In the presence of Gilmore and Bales, Ling "took [Catherine] by her arm and snatched her up to a standing position" and then "took the child's bangs and forced them back on top of her head very forcibly, very harsh, and then placed her hands on Catherine's cheeks and jerked her from side to side. . . . It appeared to be very painful." Ling also picked Catherine up by one arm and "kind of tossed her" onto a bed in the room.

Ling admitted that she struck Catherine in the face and spanked her using an inch-wide leather belt, which Ling showed to Gilmore and Bales, but she claimed that Catherine had burned her hands with hot soup while she was with a babysitter. Mr. Ling, however, told Gilmore that Catherine sustained the burns while she was at home with Ling and the grandmother. Mr. Ling also reported that Ling "did not mean to hurt Catherine and that it was an accident."

Ling was arrested and charged with two counts of cruelty to a child.[2] DFCS removed both children from the home and placed them in foster care. Following her June 2008 trial, Ling was convicted of one count of cruelty to a child, and she was sentenced to fifteen years, with ten to serve.[3] Ling subsequently filed a motion for new trial, alleging that her trial counsel was ineffective because he failed to secure an interpreter for her before and during the trial. Following an evidentiary hearing, the trial court denied the motion, and this appeal followed.

Under *Strickland v. Washington*,[4] in order to prevail on her claim of ineffective assistance of trial counsel, Ling must demonstrate "that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[5] "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility

---

[2] Count 1 alleged that Ling committed cruelty to a child in the first degree by causing Catherine cruel and excessive physical and mental pain by striking her face and ankles, causing bruising to the child. Count 2 charged that Ling committed cruelty to a child in the first degree by causing Catherine's hands to be burned.

[3] The jury found Ling guilty on Count 1 and not guilty on Count 2.

[4] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[5] *Rector v. State*, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009).

determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[6]

Ling is from Malaysia, and Mandarin Chinese is her primary language. She began speaking English when she moved to the United States in 2000. Trial counsel testified at the motion for new trial hearing, stating that although "he believed" he discussed using an interpreter with Ling at some point, he could not recall if he did so in the context of the criminal trial or the DFCS deprivation case. Trial counsel communicated with Ling in English, and he believed that they "communicated effectively." Nevertheless, he had his wife, who speaks Chinese, interpret during his first meeting with the Lings about the criminal and DFCS deprivation matters because "[he] thought certain legal terms would be better if [his] wife could translate, do a literal translation, if there was a specific legal concept that [he] was trying to translate." Counsel also had Mr. Ling translate his pretrial discussions with Ling.[7] After voir dire, the prosecutor offered Ling a plea deal that would require her to serve one year in custody. Trial counsel testified that he communicated the offer to Ling in the presence of Mr. Ling, the DFCS caseworker, and counsel for DFCS, but Ling apparently declined the offer.

Counsel stated that his decision not to use an interpreter was strategic, explaining:

> [I]t's my experience that often when you have an interpreter it causes the trial, or whatever proceeding you're involved in, to take a lot longer. I thought when we're presenting a case in front of the jury — It was my goal to have the jury like my client as much as possible. I thought by having an interpreter it would slow the case down, it would cause my jury to be more impatient. . . . At the time we tried the case there was a lot of media attention going on about some of the immigration laws and issues that were going on, there was a lot of public reaction to what was going on in Congress. So I didn't want to draw too much attention to English not being [Ling's] native language.

Through an interpreter, Ling testified at the hearing on her motion for trial, stating that trial counsel never told her that she had a right to an interpreter and that she "could hardly understand" trial counsel when he communicated with her before trial. She

---

[6] (Punctuation omitted.) Id. at 717 (6).

[7] Neither Mr. Ling nor trial counsel's wife are certified Mandarin interpreters.

further testified as follows:

Q: Did Dennis Ling ever function as an interpreter between you and [trial counsel]?
A: (Through interpreter) Yes.
Q: Did you feel like you were able to understand one another with Dennis functioning as an interpreter for you?
A: (Through interpreter) I thought I had to go to trial.
Q: All right. My question was were you able to understand what your lawyer was telling you during that meeting before the trial began?
A: A little bit.
Q: Why did you go to trial?
A: I thought I had to, I had to have the trial.
Q: Why did you believe that?
A: I'm not — I'm don't know.
Q: Did your lawyer ever explain to you that there was a one-year offer and that taking that one-year offer would involve not going to trial?
A: There should be — I think it happened, but I don't know.
Q: Did you realize that that would have required you to not — that that would have been — that that would have involved you not going to trial?
A: I don't know. I thought I had to go to trial.

Mr. Ling also testified at the hearing, and he explained that although he was asked to interpret for trial counsel during the meeting regarding the one-year plea offer, he had difficulty communicating with Ling; he believed Ling "[was] hard — she kind of hard to understand what I tried to tell her." He did not "think that [he] did real good as an interpreter." Robert Levan Miley, a friend of the Lings, also testified that Ling was familiar with "restaurant English, [but] outside of the restaurant, she's lost." Miley believed that although both Lings speak English, they "[do not] understand it," and he thought that Mr. Ling would be "incapable" of translating for his wife.

Gilmore, the DFCS caseworker who initially interviewed Ling and went to her house to investigate, testified at trial that although Ling had an accent, they were able to communicate with each other, and there was no language barrier between them. Investigator Bales also testified that Ling could speak English and that Ling had no problems communicating with Gilmore or the officers.

LaTonya Jenkins, a DFCS case manager assigned to the Ling family case in January 2007, also testified at trial. Jenkins stated that although she had some difficulties in communicating with Ling,

whenever such difficulties occurred, Jenkins would "slow down and speak slowly so that [Ling could] understand"; once she did so, the communication problems improved, and Jenkins believed that Ling was then able to comprehend their conversations.

On appeal, Ling argues that as a result of her difficulty comprehending the English language, she did not understand the plea offer from the State. She further contends that although she was physically present at trial, she was effectively absent, based on her inability to understand the proceedings.

It is well settled "that due process concerns are raised when a foreign defendant cannot understand the language spoken to [her]."[8] Therefore, "[t]he use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English."[9]

Here, the trial court reviewed Ling's claim and heard testimony at the trial and the hearing on her motion for new trial regarding Ling's ability to comprehend English, and the judge had the opportunity to observe Ling during the proceedings. In light of the testimony of trial counsel, the police officers, and the DFCS workers, we cannot say that the trial court was clearly erroneous in rejecting Ling's claim that trial counsel rendered ineffective assistance by failing to secure an interpreter for her.[10]

Additionally, with regard to Ling's claim regarding the absence of an interpreter during the actual trial, Ling "has not pointed to any specific harm that befell [her] due to [her] alleged failure to understand the proceedings, or which part of the proceedings [she] did not understand."[11] Further, as Ling concedes in her brief, "[i]t is clear that the State's evidence was overwhelming and that there was no defense."[12] Finally, Ling argues on appeal that if she had understood the legal ramifications of the plea offer, "she would either have accepted the negotiated plea, or she could have put up all of the mitigating evidence she presented in her defense properly as mitigation in a nonnegotiated setting." However, there was no testimony presented that Ling would have accepted the State's plea offer or

---

[8] *Holliday v. State*, 263 Ga. App. 664, 669 (588 SE2d 833) (2003). See also *Neugent v. State*, 294 Ga. App. 284, 288 (2) (668 SE2d 888) (2008).

[9] *Ramos v. Terry*, 279 Ga. 889, 892 (1) (622 SE2d 339) (2005).

[10] See *Neugent*, 294 Ga. App. at 288-289 (2) (affirming denial of motion for new trial based on defendant's allegation that he was unable to hear the trial testimony due to a hearing impairment); *Hersi v. State*, 257 Ga. App. 63, 64 (1) (570 SE2d 365) (2002) (affirming denial of motion for new trial alleging ineffective assistance based on trial counsel's purported failure to obtain an adequate interpreter for a defendant who alleged that he was not fluent in English). See also *United States v. Cirrincione*, 780 F2d 620, 634-635 (IV) (7th Cir. 1985).

[11] *Hersi*, 257 Ga. App. at 65 (1).

[12] See *Holliday*, 263 Ga. App. at 669.

entered a nonnegotiated plea.[13]

For the foregoing reasons, we conclude that the trial court did not err in concluding that trial counsel was not ineffective for failing to obtain an official interpreter for Ling's use.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 3, 2009

*Joseph S. Key*, for appellant.

*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney*, for appellee.

---

[13] See *Cleveland v. State*, 285 Ga. 142, 148 (674 SE2d 289) (2009) (affirming trial court's finding that the defendant failed to demonstrate that there was a reasonable probability he would have accepted the State's plea offer but for trial counsel's alleged ineffective assistance).