## S10G0460. LING v. THE STATE.
### (702 SE2d 881)

HUNSTEIN, Chief Justice.

After a Spalding County jury convicted her of one count of cruelty to children in the first degree, Annie Ling, whose native language is Mandarin Chinese, filed a motion for new trial, arguing that her trial counsel was ineffective in failing to secure an interpreter for trial and in relying on her husband to help convey the State's last minute plea agreement offer. The trial court issued an order summarily denying Ling's motion without explanation, and the Court of Appeals affirmed in *Ling v. State*, 300 Ga. App. 726 (686 SE2d 356) (2009). We granted certiorari to determine "[w]hether the trial court found as a matter of fact that the defendant spoke and understood English well enough 'to understand the nature and object of the proceedings against [her], to consult with counsel, and to assist in preparing [her] defense.'" *Drope v. Missouri*, 420 U. S. 162, 171 (95 SC 896, 43 LE2d 103) (1975). Accord *Biggs v. State*, 281 Ga. 627, 629 (642 SE2d 74) (2007). We also posed the questions of whether Ling, if she does not satisfy the competence standard in *Drope*, (a) was denied her right to be present at trial by the lack of an interpreter at trial and (b) received ineffective assistance of counsel due to her trial counsel's failure to secure an interpreter for trial.

For the reasons that follow, we hold that one who cannot communicate effectively in English may be effectively incompetent to proceed in a criminal matter and rendered effectively absent at trial if no interpreter is provided. We also now hold that trial courts must state and explain their findings when an issue concerning the need for an interpreter that implicates foundational due process rights is raised and decided at the motion for new trial stage. Accordingly, we hold that the trial court's order denying the new trial motion must be vacated and the case remanded to the trial court to apply the standard in *Drope* and to state its findings on the record.

Should the trial court find that Ling did not satisfy the *Drope* standard at the time of trial, it follows that she was denied her right to be present at trial, and, under the circumstances here, received ineffective assistance from her trial counsel. On remand, the trial court should also explain its disposition of the separate issue of whether Ling received ineffective assistance due to her trial counsel's failure to adequately convey the State's last minute plea agreement offer to her.

1. To succeed on an ineffective assistance of counsel claim, a criminal defendant must show that her counsel's performance was professionally deficient and that, but for such deficient performance, a reasonable probability exists that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Ling argued both in the trial court and Court of Appeals that her trial counsel performed deficiently in failing to secure an interpreter for trial and that she was prejudiced as a result because she was effectively absent from her own trial.

We stated unequivocally in *Ramos v. Terry*, 279 Ga. 889 (622 SE2d 339) (2005), that "[t]he use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English. [Cit.]" Id. at 892 (1). It was to secure the rights of non-English speaking persons that this Court exercised its inherent and constitutional authority to promulgate rules establishing a statewide plan for the use of interpreters in proceedings in Georgia courts. Id. at 891 (1). Both this Court and the Court of Appeals also have expressly acknowledged that failure to provide adequate interpretation services to a defendant in criminal proceedings implicates due process concerns, *Puga-Cerantes v. State*, 281 Ga. 78 (5) (635 SE2d 118) (2006); *Holliday v. State*, 263 Ga. App. 664, 668 (588 SE2d 833) (2003), although we have not previously elaborated on those concerns.

A criminal defendant's "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings" is guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution. (Citation and punctuation omitted.) *Tennessee v. Lane*, 541 U. S. 509, 523 (124 SC 1978, 158 LE2d 820) (2004); see also Ga. Const. of 1983, Art. I, Sec. I, Par. I. The due process clause also precludes trial and conviction of an accused while he or she is mentally incompetent. *Pate v. Robinson*, 383 U. S. 375, 378 (86 SC 836, 15 LE2d 815) (1966); *Biggs*, supra, 281 Ga. at 629 (3). While Ling did not expressly couch her arguments below in terms of the right not to be tried while incompetent, that issue is interrelated

with her right to be present. In *Drope*, supra, for example, the United States Supreme Court discussed the history of the prohibition against trying mentally incompetent individuals, noting that some have viewed it "as a by-product of the ban against trials in absentia; the mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself." (Citation omitted.) Id., 420 U. S. at 171. As courts in other jurisdictions have explained in addressing the constitutional concerns raised by failing to provide an interpreter for an accused, "every criminal defendant — if the right to be present is to have meaning — [must] possess sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." (Punctuation omitted.) *United States ex rel. Negron v. State of New York*, 434 F2d 386, 389 (1970), citing *Dusky v. United States*, 362 U. S. 402 (80 SC 788, 4 LE2d 824) (1960); accord *Kansas v. Calderon*, 13 P3d 871, 874-875 (Kan. 2000); *Giraldo-Rincon v. Dugger*, 707 FSupp. 504, 507 (M.D. Fla. 1989). One who is unable to communicate effectively in English and does not receive an interpreter's assistance is no more competent to proceed than an individual who is incompetent due to mental incapacity. See *Gonzalez v. Phillips*, 195 FSupp.2d 893, 903 (E.D. Mich. 2001) ("The Court sees little difference between trying a mentally incompetent[ ] defendant and trying a defendant who cannot understand the proceedings against him because he does not understand the language"); *Louisiana v. Lopes*, 805 So2d 124, 128 (2001) (non-English speaking defendants confront same barriers as those who are mentally incompetent); *United States v. Mosquera*, 816 FSupp. 168, 173 (E.D. N.Y. 1993) (prohibition against trying incompetent defendants also refers to "those who are hampered by their inability to communicate in the English language"); see also *New Hampshire v. Staples*, 437 A2d 266, 268 (N.H. 1981) ("Though the defendant in this case was not mentally deficient, his hearing impairment presents us with an analogous and equally serious problem").

The evidence before the trial court regarding the issues Ling raised concerning her English abilities was conflicting but sufficient to cast doubt on her competency to be tried without an interpreter. Given that our prior cases did not explain in detail that language deficiencies implicate the right to be present at trial and the right not to proceed while incompetent, we cannot conclude that the trial court, in summarily denying Ling's motion for new trial, necessarily found that she was competent. Rather, this case must be remanded to the trial court to apply the standard in *Drope* and explain the bases for its ruling on the motion for new trial, as we now require.

See Division 2, infra.[1]

2. We hold that when a question is raised in a motion for new trial as to whether a criminal defendant's due process rights have been violated by the absence of a qualified interpreter, the trial court must make and explain its findings on the issue on the record. Remand is therefore warranted given that the trial court denied the new trial motion without explanation.

The rules promulgated by this Court for use of interpreters in court proceedings provide that after a court examines a party or witness on the record to determine whether an interpreter is needed, the court should then "state its conclusion on the record," Appendix A, Uniform Rule for Interpreters Programs, § I (A), (D). The rules thereby recognize that such a procedure best secures the rights of non-English speakers. The same holds true at the motion for new trial stage. Certainly, a trial judge who has the opportunity to observe the proceedings, the parties, and their counsel deserve an appropriate degree of deference in assessing in the first instance whether an interpreter should be provided or, following a trial, whether the absence of an interpreter raises constitutional concerns. But when an appellate court is left to infer, assume, or surmise the nature of the trial court's findings, its ability to guard against violations of constitutional rights is compromised.

We also remind the bench that, as a recipient of federal funding, the court system in this State is obligated to provide persons who are "limited English proficient" with meaningful access to the courts in order to comply with Title VI of the Civil Rights Act of 1964, as amended, 42 USC § 2000d et seq., and the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 42 USC § 3789d (c), which prohibit national origin discrimination. Courts' compliance is subject to review by the Department of Justice. 28 CFR Part 42, Subparts C and D. For this reason as well, vigilance in protecting the rights of non-English speakers is required in all of our courts.

3. Evidence was presented at the motion for new trial hearing that just before trial, trial counsel met with Ling, her husband, and

---

[1] Should the trial court conclude that Ling was incompetent due to deficiencies in her ability to speak or understand English, it would follow that Ling was deprived of her right to be present at trial. In that event, it likewise follows that Ling would prevail on her claim of ineffective assistance of counsel based on her trial counsel's failure to secure an interpreter for trial. Trial counsel was aware of Ling's language limitations and explained his failure to secure an interpreter on the basis that he was concerned using an interpreter might cause the jury to grow impatient and did not want to draw too much attention to the fact that she was not a native English speaker given the media attention on immigration laws at the time. It is not professionally reasonable to decide to forego obtaining an interpreter for an otherwise incompetent criminal defendant based on speculative fears of juror bias, especially where, as here, there is no evidence that the defendant participated in or consented to the decision.

several representatives from the Spalding County Department of Family and Children Services to discuss a plea agreement offer from the State involving a one-year sentence. Trial counsel relied on Ling's husband to explain the offer to Ling in Chinese. According to trial counsel, the meeting lasted ten minutes before the group was summoned and told they needed to make a decision. Ling's trial counsel agreed that it was a "stressful, nervous moment." The record raises questions as to whether Ling's trial counsel reasonably relied on Ling's husband to convey the plea agreement offer and whether Ling can show prejudice on the basis that she would have accepted the plea agreement offer had she understood it. While Ling did not testify directly that she would have accepted the offer, her repeated statements that she thought she had to go to trial give rise to at least an inference that she would have preferred accepting the offer. See *Lloyd v. State*, 258 Ga. 645 (2) (b) (373 SE2d 1) (1988). On remand, the trial court should explain its resolution of Ling's ineffectiveness claim concerning trial counsel's alleged failure to convey the State's final plea agreement offer. *Talbot v. State*, 261 Ga. App. 12 (2) (c) (581 SE2d 669) (2003) (remanding for further findings when trial court's findings did not address claim that trial counsel failed to convey plea offer and it was unclear whether trial court addressed matter at all).

For the reasons set forth above, we vacate the Court of Appeals' opinion with direction that it vacate the trial court's order denying Ling's motion for new trial and remand for proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. All the Justices concur, except Carley, P. J., Thompson and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

The opinion of the majority is premised upon the precarious and ill-founded assumption that the trial court defaulted in its duty in determining the sufficiency of Ling's understanding of the English language, and thereby, in denying her motion for new trial. This assumption is unsupported by both the facts of this case and well established law. In addition, the majority adds an unwarranted and unnecessary burden for the trial courts of this State. For these reasons, I respectfully dissent.

As noted by the majority, this Court granted certiorari to the Court of Appeals to consider whether the trial court, in the context of a claim of the ineffective assistance of trial counsel, made a finding of fact that defendant, Annie Ling, spoke and understood English well enough "to understand the nature and object of the proceedings against [her], to consult with counsel, and to assist in preparing [her] defense." See *Drope v. Missouri*, 420 U. S. 162, 171 (95 SC 896, 43

LE2d 103) (1975). Accord *Biggs v. State*, 281 Ga. 627, 629 (642 SE2d 74) (2007). And, examination of the record in light of the applicable legal principles compels the conclusions that the trial court implicitly made such a finding and that it is supported by the evidence.

The opinion of the Court of Appeals set forth the salient facts. After receiving allegations that Ling had physically abused her young son and daughter, the Spalding County Department of Family and Children Services ("DFCS") began an investigation. In January 2007, Gilmore, a DFCS social services worker, interviewed Ling and her husband at the restaurant where they worked. Also present were Bales and Mason, who were employed by the City of Griffin Police Department. With the Lings' permission, Gilmore, accompanied by Bales, went to their home to see the children. When the two women arrived at the Ling residence, the children's grandmother, who did not speak English, initially denied them entry into the house, but she then allowed them to enter after she spoke with Ling on the telephone.

Subsequently, Ling arrived at the home and permitted Gilmore and Bales to inspect her 22-month-old daughter, who was sleeping in a locked room. Gilmore and Bales observed that the baby had visible bruising on both sides of her face, the bridge of her nose, the backs of her legs, her ankles, her feet, and her back. She also had burns on both of her hands, was very thin, and appeared unhealthy. In the presence of Gilmore and Bales, Ling "took [her daughter] by her arm and snatched her up to a standing position" and then "took the child's bangs and forced them back on top of her head very forcibly, very harsh, and then placed her hands on [the child's] cheeks and jerked her from side to side. . . . It appeared to be very painful." Ling also picked the child up by one arm and "kind of tossed her" onto a bed in the room. Ling admitted that she struck her daughter in the face and spanked her using an inch-wide leather belt, which Ling showed to Gilmore and Bales, but she claimed that the child had burned her hands with hot soup while she was with a babysitter. However, Ling's husband told Gilmore that the little girl had sustained the burns while she was at home with Ling and the grandmother. He also reported that Ling "did not mean to hurt [the girl] and that it was an accident."

Ling was arrested and charged with two counts of cruelty to a child, and her children were removed from the home and placed in foster care. Following a 2008 trial, Ling was convicted of one count of cruelty to a child, and she was sentenced to fifteen years, with ten to serve in prison. Ling then filed a motion for new trial, alleging the ineffectiveness of her trial counsel because he failed to secure an interpreter for her before and during her trial. Following an evidentiary hearing, the trial court denied the motion, and Ling appealed to

the Court of Appeals, enumerating as error the ineffectiveness claim. The Court of Appeals held that the trial court did not err in concluding that trial counsel was not ineffective for failing to obtain an official interpreter for Ling's use. *Ling v. State*, 300 Ga. App. 726, 731 (686 SE2d 356) (2009).

In order for Ling to prevail on her claim that her trial counsel was ineffective for failing to secure the pre-trial and trial services of a certified interpreter, she has to show that her attorney's performance was deficient and that such deficiency prejudiced her so that there was a reasonable likelihood that, but for counsel's errors, the outcome of her trial would have been different; she has to overcome the strong presumption that her attorney's conduct fell within the broad range of reasonable professional conduct. *Sanford v. State*, 287 Ga. 351, 356 (5) (695 SE2d 579) (2010), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The appellate court gives deference to the trial court's factual findings, which must be upheld unless clearly erroneous, but it is to review the lower court's legal conclusions de novo. Id.

Certainly, both this Court and the Court of Appeals have made plain that due process concerns are raised when a foreign defendant cannot understand the language spoken to that defendant and when the accuracy of a translation is subject to doubt. See *Puga-Cerantes v. State*, 281 Ga. 78, 80-81 (5) (635 SE2d 118) (2006); *Holliday v. State*, 263 Ga. App. 664, 669 (588 SE2d 833) (2003). And, such due process concerns are inextricably tied to the issue of a defendant's competency to stand trial. *Biggs v. State*, supra at 629 (3). The issue of Ling's comprehension of the English language for the purpose of her understanding of both her pre-trial and trial proceedings, and thus, an assessment of her competency to stand trial, was squarely before the trial court in its consideration of Ling's motion for new trial because the sole basis of the motion was her claim that her trial counsel was ineffective for failing to provide her with the needed assistance of an interpreter. *Biggs v. State*, supra at 630 (3). The trial court conducted a full hearing in the matter, at which the court had ample opportunity to observe Ling, before rejecting her claim that her trial attorney had been deficient for not securing the assistance of an official interpreter. That the court's order doing so did not contain express findings that Ling spoke and understood English sufficiently to be competent to assist in her defense and to stand trial does not negate the fact that such findings are implicit in the court's ruling. It had to find Ling competent, otherwise she could not constitutionally have been subjected to trial. *Biggs v. State*, supra at 629-630 (3). A trial court is presumed to know the law and to faithfully and lawfully perform the duties devolved upon it by law. *In the Interest of I. W.*, 304 Ga. App. 225, 229 (3) (695 SE2d 739) (2010).

The majority acknowledges that the evidence regarding the quality of Ling's comprehension of English was in dispute. And, unquestionably the resolution of conflicting evidence and determinations of the credibility of the witnesses testifying about Ling's language proficiency for the purpose of her motion were properly for the trial court. *Copeland v. State*, 281 Ga. App. 11, 14 (3) (d) (635 SE2d 283) (2006). The trial court was in the optimal position to assess the credibility of all of the witnesses, including their potential for bias or self-interest; for example the trial court was able to assess the testimony of Ling's husband about Ling's lack of English skills, in the face of the fact that there was no evidence that the husband voiced concern about any language deficiencies prior to his wife's conviction and her quest for a new trial. And again, it should not be minimized that the trial court was in the unique position of being able to hear and see Ling for itself, and thereby assess independently the extent of her ability with the English language. The majority states that "a trial judge who has the opportunity to observe the proceedings, the parties, and their counsel deserves an appropriate degree of deference" in assessing the need for an interpreter. Yet, this is plainly no more than lip service because the majority then usurps the role of the trial court in this case and gives no deference whatsoever to the trial court's rejection of Ling's claim that she deserves another trial because she did not have the services of an official interpreter.

In any event, as noted by the Court of Appeals, Ling is from Malaysia, and Mandarin Chinese is her native language; but, there was evidence fully supporting a determination that Ling's command of English was sufficient to stand trial without the assistance of an official interpreter. Ling began to learn English when she moved to the United States in 2000 — eight years before her trial; trial counsel communicated with Ling in English, and counsel believed that they "communicated effectively"; not only did trial counsel speak and otherwise interact with Ling in regard to her criminal prosecution, but he also represented her in a related deprivation proceeding; in addition, in an abundance of caution, trial counsel had his Chinese wife interpret during his first meeting with the Lings about the criminal and DFCS deprivation matters; counsel also had Mr. Ling translate his pretrial discussions with Ling; the prosecutor offered Ling a plea deal that would have required her to serve one year in custody, and trial counsel communicated the offer to Ling in the presence of Mr. Ling, the DFCS caseworker, and counsel for DFCS; Gilmore had been able to communicate with Ling and believed that there was no language barrier between them; Bales testified that Ling could speak English and that Ling had no problems communicating with Gilmore or the officers; also a DFCS case manager

assigned to the Ling case testified that although she had some difficulties in communicating with Ling, once she spoke slowly any communication problems improved, and Ling was able to comprehend their conversations. Furthermore, at the motion for new trial hearing, Ling, through an interpreter, acknowledged that her husband had functioned as an interpreter between herself and trial counsel; that she was able to understand "a little bit" what her lawyer was telling her during the meeting at which the decision to go to trial had been discussed; that she believed that she had to go to trial but did not know why she believed that; and that she "[thought that] it happened" that her lawyer explained to her that there was a one-year plea offer and that taking such offer would result in not going to trial. This evidence plainly supports the finding that Ling did speak and understand English well enough to understand the nature and object of her criminal prosecution and to meaningfully participate in both pre-trial decisions and her defense at trial. *Drope v. Missouri*, supra at 171; *Biggs v. State*, supra at 629 (3).

Specifically, in the context of a claim of ineffective assistance of counsel, the trial court is to be the judge of witness credibility, and its denial of an ineffectiveness claim based on conflicting evidence cannot be said to be clearly erroneous. *Hartley v. State*, 299 Ga. App. 534, 538 (2) (683 SE2d 109) (2009). At the hearing before the trial court, defense counsel also explained that his decision not to use an official interpreter was strategic: he felt that it would cause the trial to take longer and make the jury impatient which would impact negatively on his goal of having the jury like Ling as much as possible; also, at the time of trial there was a lot of negative media reports concerning immigration laws and issues, so counsel did not want to draw more attention, impliedly, to the fact that Ling was an immigrant. A determination of deficient performance by counsel based upon strategy is supportable only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it. *Williams v. State*, 286 Ga. 884, 887 (4) (a) (692 SE2d 374) (2010).

Even assuming the deficiency of counsel for failing to secure the services of an official interpreter, Ling has failed to show that, but for such deficiency, the outcome of her trial would have been different. *Sanford v. State*, supra at 356 (5). She failed to present evidence that she would have accepted the State's plea offer or entered a non-negotiated plea in order to avoid trial. Indeed, the record supports a conclusion to the contrary. As noted, at the motion for new trial hearing, Ling admitted that trial counsel had explained to her the plea offer on the table, and that accepting the offer would have resulted in her avoiding a trial; the testimony permits the clear inference that Ling made a knowledgeable and voluntary decision to

reject the plea offer and take her chances at trial. Moreover, the evidence at trial that she had committed the alleged brutality and cruelty to her baby daughter was overwhelming, and she has failed to demonstrate that the presence of an interpreter would have, in some meaningful manner, mitigated the damaging evidence, so that she would have had a more favorable outcome in any trial. *Sanford v. State*, supra at 356 (5).

Certainly, it would be difficult to find fault with a trial court making express findings in its ruling on a motion for new trial as to whether a criminal defendant's due process rights have been abridged by the absence of an official interpreter either pre-trial or at trial; but, the absence of such findings should not fatally flaw an otherwise legally and factually based ruling in this regard. Furthermore, the whole basis of the majority's created requirement does not withstand scrutiny; the majority takes a uniform rule regarding the use of interpreters in court proceedings which was promulgated by this Court for that limited purpose, and without explanation or appropriate legal support, transforms it into a mandate with due process implications and of constitutional dimension. Refusing to engraft the requirements of express findings and supporting explanations into the well-worn body of governing law in no manner compromises the ability of persons, who are non-native speakers of the English language, to have meaningful access to the American court system. In fact, quite the contrary. It allows the trial courts to perform their legal duty of determining competency without adding yet another layer of labor for the already overburdened trial judiciary; to require otherwise potentially impedes rather than promotes, vigilance in protecting the rights of not only those whose English is limited but of all who rely upon the judiciary for reasonable speed and access to their day in court and the due process of law.

Simply, this case boils down to a battle of the evidence, and the evidence supports the trial court's fundamental findings that Ling was competent to stand trial and had the benefit of due process. It should not be used as a vehicle for this Court to add precedent where none is required. The Court of Appeals' affirmance of the trial court's rejection of Ling's claim of the ineffective assistance of trial counsel should stand.

I am authorized to state that Presiding Justice Carley and Justice Thompson join in this dissent.

DECIDED NOVEMBER 22, 2010.

*J. Scott Key*, for appellant.

*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney*, for appellee.

*King & Spalding, Robert K. Woo, Jr., James A. Broussard, Chara F. Jackson, Azadeh N. Shahshahani, David Wakukawa, Jennifer C. Newell, Araceli Martinez-Olguin, Brian Steel*, amici curiae.