**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 1, 2021**

# In the Court of Appeals of Georgia

A21A0124. ELSAYED et al. v. BAKAYOKO.

MCFADDEN, Chief Judge.

Mansour Elsayed sued Losseni Bakayoko for breach of an oral agreement. Bakayoko filed counterclaims against Elsayed. After a bench trial, the trial court entered judgment for Bakayoko on one of his counterclaims, for Bakayoko on all of Elsayed's claims, and against Bakayoko on his other counterclaims. The court also awarded Bakayoko attorney fees.

Elsayed filed this appeal. He argues that the trial court erred by failing to appoint an interpreter, but he has not shown reversible error. He argues that the evidence does not support the judgment in favor of Bakayoko on Elsayed's claims, but some evidence supports it. He argues that the trial court erred by refusing to admit certain police reports into evidence, but he did not proffer the excluded evidence at

trial so we presume that the trial court's ruling was correct. He argues that the trial court erred by awarding attorney fees to Bakayoko. We hold that the attorney fee award must be vacated because the trial court did not specify the statutory basis for the award. So we affirm the judgment but vacate the attorney fee award and remand for further proceedings.

1. *Factual and procedural background.*

"A trial judge sitting without a jury is entitled to have [her] judgment considered as a verdict by a jury, and if there is any evidence to support the finding, it should be affirmed. Also the evidence must be construed most strongly in favor of the prevailing party." *Broadcast Concepts v. Optimus Financial Svcs.*, 274 Ga. App. 632, 635-636 (3) (618 SE2d 612) (2005) (citations and punctuation omitted).

So construed, the evidence shows that Elsayed owns a used car dealership and Bakayoko is a mechanic. In 2016, they entered a verbal agreement under which Bakayoko would perform his work at Elsayed's car lot. They agreed to evenly split the revenue from Bakayoko's services, whether Bakayoko worked on Elsayed cars or cars from his own customers. The agreement ended at the end of March or the beginning of April, 2018.

Elsayed filed a claim against Bakayoko in magistrate court seeking to recover revenue that he alleged Bakayoko owed him. Bakayoko answered and filed a counterclaim. Because Bakayoko sought damages that exceeded the magistrate court's jurisdictional limit, the case was transferred to the state court.

In the state court, Elsayed filed a pro se, handwritten document asking the court to reschedule a court date and "also request[ing] a translator from English to Arabic and Arabic to English to help [him] and [his] witnesses in this case."[1] The court addressed one of Elsayed's requests — she granted a continuance — but she did not address his request for a translator. Court-ordered mediation was unsuccessful, so the court conducted a bench trial.

After hearing the testimony of Elsayed and Bakayoko, the trial court entered a judgment. The trial court rejected Elsayed's claims and Bakayoko's monetary counterclaims. But she found in Bakayoko's favor on his claim for the return of a car in Elsayed's possession. The court also awarded Bakayoko $7,500 in attorney fees. Elsayed filed this appeal.

---

[1]Elsayed requested a translator, not an interpreter, but from the context it is clear that he intended to request an interpreter. Translators translate written text while interpreters interpret spoken or sign language. See American Translators Association, https://www.atanet.org/client-assistance/translator-vs-interpreter/ (retrieved March 5, 2021).

2. *Failure to provide an interpreter.*

Elsayed argues that the trial court erred by denying his request for an interpreter without conducting an examination of him on the record. We hold that although the trial court did not engage in all of the formality contemplated in the Georgia Supreme Court Rules for the Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Elsayed has not shown reversible error, given that Elsayed himself informed the court at trial that he did not need an interpreter and then never clearly requested an interpreter again.

Recognizing that "the use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English," our Supreme Court "exercised its inherent and constitutional authority to promulgate rules establishing a statewide plan for the use of interpreters in proceedings in Georgia courts." *Ling v. State*, 288 Ga. 299, 300 (702 SE2d 881) (2010) (citations and punctuation omitted). Under those rules, a judge must provide an interpreter for a non-English speaker who "cannot understand and speak English well enough to participate fully in the proceedings and to assist counsel." Georgia Supreme Court Rules for the Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Appendix A, Uniform Rule for Interpreter

4

Programs, Rule II (A), Rule for Foreign Language Interpreters ("Interpreter Rules"). See also Interpreter Rules, Rule IV (B) ("Each non-English speaking party shall have the right to an interpreter at each critical stage of the proceedings [in civil cases] at no cost to the non-English speaking person."). The Interpreter Rules state that a judge should conduct an examination on the record to determine whether an interpreter is needed when: "(1) a party or counsel requests such an examination; or (2) it appears to the decision maker that the party . . . may not understand and speak English well enough to participate fully in the proceedings[;] or (3) if the party . . . requests an interpreter." Interpreter Rules, Rule II (B). The judge should ask questions concerning:

> 1. Identification (for example: name, address, birth date, age, place of birth); 2. Active vocabulary in vernacular English (for example: "How did you come to the proceeding today?", "What kind of work do you do?", "Where did you go to school?", "What was the highest grade you completed?", "Describe what you see in the room", "What have you eaten today?"). Questions should be phrased to avoid "yes or no" replies; 3. The criminal or civil proceedings (for example: the nature of the charge or the type of proceeding, the purpose of the proceedings and function of the decision maker, the rights of a party or criminal defendant, and the responsibilities of a witness).

Interpreter Rules, Rule II (C). The judge should then state on the record whether an interpreter is needed. Interpreter Rules, Rule II (D).

Uniform State Court Rule 7.3 establishes the procedure for a party in a civil case to obtain a court-appointed interpreter. Subsection A provides in pertinent part:

> In all civil . . . cases, the party or party's attorney shall inform the court in the form of a notice of the need for a qualified interpreter, if known, within a reasonable time—at least 5 days where practicable—before any hearing, trial, or other court proceeding. Such notice shall be filed and shall comply with any other service requirements established by the court. The notice shall (1) designate the participants in the proceeding who will need the services of an interpreter, (2) estimate the length of the proceeding for which the interpreter is required, (3) state whether the interpreter will be needed for all proceedings in the case, and (4) indicate the language(s), including sign language for the Deaf/Hard of Hearing, for which the interpreter is required.

Uniform State Court Rule 7.3 (A). Even absent notice of the need for a qualified interpreter, however,

> the court shall appoint a court interpreter whenever it becomes apparent from the court's own observations or from disclosures by any other person that a participant in a proceeding is unable to hear, speak, or otherwise communicate in the English language to the extent reasonably necessary to meaningfully participate in the proceeding.

Uniform State Court Rule 7.3 (D). "The use of interpreters is within the sound discretion of the trial court." *Choi v. State*, 269 Ga. 376, 377 (3) (497 SE2d 563) (1998).

The record does not reflect that the trial court nor Elsayed's counsel took any action on the pro se, written request for an interpreter prior to the bench trial. But the use of an interpreter or translator was referenced three times at the trial. The first time came at the beginning of the trial. Before the court heard the parties' opening statements, counsel for Elsayed informed the court that she had "one outstanding issue to just delve into." She told the court that she had asked for an interpreter for Elsayed, and an interpreter had been there on Monday (although the record does not make clear what had transpired on the Monday before trial nor does the record include any request for an interpreter from the attorney). Counsel explained that she did not want Elsayed to misunderstand difficult cross-examination questions. Counsel for Bakayoko responded that they had addressed the issue previously when the parties engaged in mediation. There, he explained, Elsayed said he needed an interpreter and an interpreter had shown up, but as the mediation continued, Elsayed said he no longer needed an interpreter so the interpreter left.

The court responded, "It sounds like he may be able to understand for the most part . . . everything that is said." Elsayed responded, "That's what I just say before. I can understand, but sometimes the law stuff I cannot understand." He added,"I'm sure I can handle it." The trial court asked Elsayed his native language. He responded Arabic. The court stated, "Arabic. Okay. Well, you and I are speaking and communicating very well. If at any time you do not understand or need counsel[] to repeat or speak more slowly, then we can do that." Counsel then gave their opening statements and the trial proceeded.

Although the trial court did not ask Elsayed questions about all the topics contemplated in Interpreter Rules, Rule II (C), she did address the issue with Elsayed on the record as required by Interpreter Rules, Rule II (B). And given Elsayed's statement that he could "handle it," we cannot say that the trial court abused her discretion by failing to appoint an interpreter at this point in the proceedings.

The second time an interpreter or translator was mentioned at trial was during counsel's direct examination of Elsayed. His attorney asked him whether Bakayoko had been a partner in the business. Elsayed answered, and the court sought clarification, asking, "Is he a partner?" Elsayed responded, "He's kind of what — he's partner in work. So if I give him — like we met finally income in the work and in the

8

sales. This amount I give him his part. But he's not included in the business." Elsayed's attorney commented,

> Excuse me, your Honor. This is where I think there's a cultural, you know, connotation that I think an interpreter or a translator would really helped with which is what we were hoping for because culturally speaking, in the Muslim world, culturally — and Mr. Bakayoko is a Muslim as well — you are considered to be a partner as long as you are working with someone and working for your own means and not an employee, but legally it wouldn't be considered an actual partnership.

The court responded, "Thank you." Elsayed's counsel did not request an interpreter nor did she invoke a ruling by the trial court.

The third instance arose when his attorney asked Elsayed to identify an exhibit. Elsayed responded, "This is police report. I came early in the morning. I found that three of my cars blocked the entrance. It got moved." The trial court instructed Elsayed just to identify the exhibit. He identified it and then commented, "I'm sorry. That's the reason I need the translator." The court responded, "You can understand English very well, Mr. Elsayed." His attorney stated, "He's just nervous." Again, trial counsel did not request an interpreter or invoke a ruling.

The better practice, once Elsayed requested an interpreter, would have been for the trial court to follow the Interpreter Rules by questioning him on the record on the

9

topics suggested in the Rules and then stating on the record her determination of whether or not Elsayed could understand and speak English well enough to participate fully in the proceedings and to assist counsel. But on the record before us, we cannot say that the trial court abused her discretion in failing to appoint an interpreter. When the trial court began the process of speaking with Elsayed to determine whether an interpreter was needed, Elsayed himself informed her that he was sure that he could proceed without an interpreter. The court thus did not appoint one but informed Elsayed that he could ask for one as the trial proceeded. After that, neither Elsayed nor his counsel distinctly asked for the appointment of an interpreter because of Elsayed's inability to understand and speak English or invoke a ruling on the need for an interpreter.

"[A] trial judge who has the opportunity to observe the proceedings, the parties, and their counsel deserve[s] an appropriate degree of deference in assessing in the first instance whether an interpreter should be provided. . . ." *Ling*, 288 Ga. at 302 (2). Given the deference owed to the trial court, we cannot say that Elsayed has shown that the trial court abused her discretion.

3. *The evidence supports the trial court's judgment for Bakayoko on Elsayed's claim for lost revenue.*

10

Elsayed argues that the trial court erred by entering judgment in favor of Bakayoko on Elsayed's claim for lost revenue from April 1, 2018 to July 31, 2018. But Elsayed testified that the parties' arrangement ended at the end of March 2018 and Bakayoko testified that he stopped working for Elsayed at the beginning of April 2018. So some evidence supports the trial court's judgment that Elsayed was not entitled to the revenue and we must affirm. *Atlanta Truck Parts v. Zenon & Zenon Contractors*, 345 Ga. App. 507, 509 (3) (813 SE2d 178) (2018).

3. *Elsayed has not demonstrated error in the trial court's refusal to admit police reports into evidence.*

Elsayed argues that the trial court erred by refusing to admit police reports because the evidence falls into an exception to the hearsay rule. He has not shown error.

During direct examination of Elsayed, his attorney informed the court that she would like to have plaintiff's exhibit 6, a police report, admitted. The trial court refused to admit the exhibit because the police were not at the trial. Counsel moved on, neither arguing that the court should admit the exhibit nor proffering the exhibit. Later, on redirect, counsel stated "we would tender two police reports that kind of

11

speak to this, but since the police is not here, we cannot offer them." Again, she neither argued that the court should admit the reports nor proffered them.

We "cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence. . . ." *Fletcher v. Estes*, 268 Ga. App. 596, 597 (1) (602 SE2d 164) (2004) (citation and punctuation omitted)."Because [Elsayed] never proffered the excluded [police reports] at trial and the [police reports are] not in the appellate record, we presume that the trial court's evidentiary ruling was correct." *HA&W Financial Advisors, LLC v. Johnson*, 336 Ga. App. 647, 654 (2) (782 SE2d 855) (2016).

4. *Attorney fees*.

Elsayed challenges the award of attorney fees to Bakayoko. We agree that the award must be vacated and the case remanded.

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." *Cothran v. Mehosky*, 286 Ga. App. 640, 641 (649 SE2d 838) (2007) (citation and punctuation omitted). In his counterclaim, Bakayoko did not specify a statutory basis for his fee request. At the trial, his attorney testified to the time he had spent on the case as well as his hourly rate but he did not argue a statutory basis for an attorney fee award. And

in her order awarding Bakayoko attorney fees, the trial court "set[] forth neither the statutory basis for the attorney fees award nor any findings necessary to support it. Accordingly, we vacate the portion of the judgment awarding attorney fees and remand for an explanation of the statutory ground for the award and any findings necessary to support such an award." *Capital Floors, LLC v. Furman*, 351 Ga. App. 589, 599 (5) (831 SE2d 522) (2019).

*Judgment affirmed in part and vacated in part, and case remanded. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*