**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 28, 2025**

# In the Court of Appeals of Georgia

A24A1290. ACUNA-MARTINEZ v. THE STATE.

MERCIER, Chief Judge.

Following a jury trial, Celestino Acuna-Martinez ("Martinez") was convicted of four counts of child molestation, two counts of rape, two counts of false imprisonment (one count of false imprisonment was for a victim under fourteen years of age), one count of enticing a child for indecent purposes, and two counts of aggravated child molestation. As a native Spanish speaker, Martinez filed this appeal, arguing that he was denied constitutional due process of law because he was not provided with an interpreter and that he received ineffective assistance of counsel due to his counsel's failure to request an intrepreter. For the following reasons, we affirm.

1. Martinez argues that his constitutional due process rights were violated because the trial court failed to appoint an interpreter for him. "Interpreters are required to ensure meaningful access to our legal system by non-English speakers." *Kinlaw v. State*, 317 Ga. 414, 419 (3) (893 SE2d 712) (2023) (citation and punctuation omitted). Further, "the absence of a qualified interpreter for a criminal defendant who cannot effectively communicate in English may implicate constitutional concerns." Id. at 420 (3). "[O]ne who cannot communicate effectively in English may be effectively incompetent to proceed in a criminal matter and rendered effectively absent at trial if no interpreter is provided." *Ling v. State*, 288. Ga. 299, 299 (702 SE2d 881) (2010). In our review of a trial court's decision regarding an interpreter, we defer to the trial court's findings. Id. at 302 (2) ("Certainly, a trial judge who has the opportunity to observe the proceedings, the parties, and their counsel deserve an appropriate degree of deference in assessing in the first instance whether an interpreter should be provided or, following a trial, whether the absence of an interpreter raises constitutional concerns.").

Prior to the start of trial, the trial court held a hearing to determine if Martinez required the assistance of an interpreter.[1] At the hearing, his counsel stated that she had represented "Martinez for a while now since he was first arrested. He's speaking English with me, and he and I can communicate fine." The trial court then engaged in the following colloquy with Martinez:

> THE COURT: Mr. Martinez, are you having any trouble understanding me?
>
> [MARTINEZ]: If you speak very fast, yes. If you go slow, I can understand.
>
> THE COURT: Well, I need to know that you can understand everything that's going on here, and some folks speak more quickly than others. Have you been to school here?
>
> [MARTINEZ]: No.
>
> THE COURT: How long have you been in the US?
>
> [MARTINEZ]: Fifteen years.

---

[1] Martinez's first trial, which began on April 12, 2016, resulted in a mistrial. His second trial began on May 23, 2016, and resulted in the underlying convictions. The hearing regarding Martinez's possible need for an interpreter occurred on April 11, 2016, the day before the first trial began.

THE COURT: All right. And how did you learn English?

[MARTINEZ]: Mexico, in school.

THE COURT: So you learned English in school in Mexico?

[MARTINEZ]: Yes.

THE COURT: And tell me about that process; what does that mean?

[MARTINEZ]: About my English?

THE COURT: The schooling. Explain what that means.

[MARTINEZ]: They begin to teach me in the middle school, first grade, second grade, third grade and in high school, a little bit more. And when finish high school, I start college, but I'm now finished college and start to work. And then I quit and that's when I decide to come to the United States to work.

THE COURT: And do you feel like that you can understand English well enough to assist your attorney, Ms. Lynn, in this case?

Have you had any trouble discussing things with Ms. Lynn?

[MARTINEZ]: No

. . .

THE COURT: Did you have any trouble understanding what was happening when you went to court before?

[MARTINEZ]: Most things when they give me the paper for the bond, just they're using that specific code that I don't know what that means.

THE COURT: So you didn't understand some of the terms they used?

[MARTINEZ]: Yes.

THE COURT: Siting [sic] the laws, specific laws - - but that wasn't a result of a lack of ability to understand English, more of a lack of familiarity with the law?

[MARTINEZ]: Yes.

The trial court found that Martinez understood the proceedings and did not require an interpreter. At the conclusion of the hearing, the court instructed Martinez and his counsel that "if there are any issues" they needed to bring it to the court's attention, and Martinez told the court that he would. At no point did Martinez or his counsel inform the trial court of any language barrier issues, and Martinez proceeded through

trial without an interpreter. Instead, Martinez waited until his second amended motion for new trial to argue that he should have been appointed an interpreter at trial.

Our Supreme Court, through its constitutional authority to adopt rules for the resolution of disputes (Ga. Const. of 1983, Art. VI, Sec. IX, Par. I), has established "a statewide plan for the use of interpreters in proceedings involving non-English speakers before any court or grand jury hearing in Georgia." *Ramos v. Terry*, 279 Ga. 889, 891 (1) (622 SE2d 339) (2005). At the time of the hearing, the rules stated that, in criminal cases: "Each non-English speaking party will be provided with an interpreter at each critical stage of the proceeding at no cost." Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Appendix A, § III (A) (2012). A non-English speaking person was defined as

> any party or witness who cannot readily understand or communicate in spoken English and who consequently cannot equally participate in or benefit from the proceedings unless an interpreter is available to assist him or her. The fact that a person for whom English is a second language knows some English should not prohibit that individual from being allowed to have an interpreter.

Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, § I (B) (2012).

At the motion for new trial hearing, one of Martinez's trial attorneys testified that she "could communicate with [Martinez and she] did not think an interpreter was necessary." She stated further that: "In my opinion, having been a lawyer for eighteen years at the time, my client did not need help interpreting what was going on. Had he needed help interpreting what was going on, we would have had an interpreter." She also testified that she had used interpreters with other clients, and at no point during the first or second trial did Martinez tell her that he did not understand the proceedings or did he ask for interpreter.

The motion for new trial judge, who had also presided over the trial, found that Martinez's "command of the English language was such that the absence of an interpreter did not deny [Martinez] of his right to meaningfully participate in the proceedings against him." The record supports this finding. See *Sarat-Vasquez v. State*, 350 Ga. App. 322, 323-326 (1) (829 SE2d 394) (2019) (deferring to trial court's credibility determination that defendant could understand English well enough to participate fully in trial and did not require an interpreter); see also *Cruz v. State*, 305 Ga. App. 805, 809 (2) (700 SE2d 631) (2010) ("Given the fact that the defendants never objected to the Spanish translation of the proceedings and even affirmatively

7

stated that they were able to understand their interpreters, we cannot say that the trial court clearly erred in finding that defendants' claim that they could not understand the proceedings lacked credibility."). As such, we cannot say that the trial court erred by finding that Martinez adequately understood English and was able to meaningfully participate in the trial.[2]

2. Martinez argues that he received ineffective assistance because his trial counsel failed to obtain an interpreter for their communications, for the pre-trial proceedings and for the trial. He also claims that the alleged errors, regarding a lack of interpretation, were cumulatively prejudicial.

"To prevail on his claim of ineffectiveness, appellant must show both that trial counsel's performance was deficient and that but for the deficiency, there is a reasonable probability that the outcome of his trial would have been different." *Cisneros v. State*, 299 Ga. 841, 848 (3) (792 SE2d 326) (2016), citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "In the

---

[2] Given the trial court's finding that Martinez could understand English sufficiently in order to participate fully in trial, we affirm the trial court's denial of a motion for new trial. However, we take the time to repeat our Supreme Court's admonition that "vigilance in protecting the rights of non-English speakers is required in all of our courts." *Ling v. State*, 288 Ga. 299, 302 (2) (702 SE2d 881) (2010).

event appellant fails to satisfy either the deficient performance or prejudice prong of the *Strickland* test, this Court is not required to examine the other prong." Id. (citation and punctuation omitted).

As discussed in Division I, Martinez has failed to show that his due process rights were violated for pre-trial proceedings or for the trial by the absence of an interpreter. See *Sarat-Vasquez*, 350 Ga. App. at 326 (2). Accordingly, as Martinez has failed to show prejudice, his claim for ineffective assistance fails. See id. Further, we reject Martinez's claim that the cumulative prejudice of errors entitle him to a new trial. See *Hardy*, 363 Ga. App. at 746-747 (3) (defendant's failure to establish prejudice on either of his claimed errors necessarily led to a failed claim for cumulative prejudice).

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur.*