A05A0069. JACKSON v. THE STATE.
(609 SE2d 643)

PHIPPS, Judge.

Terrence Jackson appeals his convictions of aggravated sodomy and aggravated sexual battery. He challenges the effectiveness of his appointed counsel, the sufficiency of the evidence, and certain actions by the trial court. Finding no merit in any of Jackson's claims of error, we affirm.

Jackson was charged with rape, aggravated sodomy, and aggravated sexual battery of C. T., giving a false name to a police officer, and possession of less than one ounce of marijuana. Prior to trial, Jackson pled guilty to the latter two charges. His first trial ended in a mistrial because the jury was unable to reach a unanimous verdict. At Jackson's retrial, the jury found him not guilty of rape but guilty of aggravated sodomy and aggravated sexual battery.

After the court sentenced Jackson to concurrent terms of 30 and 20 years imprisonment, the appointed lawyer who had represented him at both trials withdrew at Jackson's request. A newly appointed attorney filed a motion for new trial but then withdrew as counsel, again at Jackson's request. A third attorney filed an amended motion for new trial, claiming ineffective assistance of trial counsel. Shortly after the hearing on the motion for new trial, that attorney withdrew because Jackson had filed a grievance against him with the State Bar. After the trial court denied the motion for new trial, Jackson's current appellate counsel filed a notice of appeal.

---

[3] *Baldwin v. State,* 242 Ga. App. 205, 207 (529 SE2d 201) (2000).

Testimony was given at both trials by C. T., Jackson, C. T.'s sister (K. M.), the owner of the residence to which C. T. fled after the incident, police officers involved in the investigation, the nurse who performed a sexual assault examination on C. T., and a forensic biologist from the Georgia Bureau of Investigation crime lab.

K. M. testified that on the night in question, she and C. T. had gone to a bar known as the Sports Zone with a friend. They left the sports bar around midnight and went to another bar called Big Daddy's, where they encountered Jackson, whom they had seen at the sports bar. Jackson engaged C. T. in conversation and then asked her to go with him to a restaurant to get something to eat. Although K. M. did not think it was a good idea, C. T. accepted Jackson's invitation.

C. T. testified that Jackson did not, however, go to the restaurant. Instead, he drove down a dirt road, parked his car, forcefully removed some of her clothing, and forced himself sexually upon her. According to C. T., Jackson forcefully inserted his finger and penis into her vagina and placed his mouth on her vagina. He then fell asleep because he had been drinking, whereupon C. T. escaped to a nearby mobile home park. She knocked on the door of Antonio Williams's mobile home and told him she had been raped. Williams testified that C. T. was crying, that her hair was disheveled, and that she appeared to be extremely upset. He called the police.

City of Albany Police Officer Graham Stacy responded to the call. Stacy testified that C. T. was trembling, crying, and generally appeared very traumatized. She told him she had been raped and gave descriptions of her assailant and the vehicle he was driving. Stacy put out a radio alert for the suspect, and C. T. was taken to the hospital. Responding to the alert, Officer Donald Williams stopped a car being driven by Jackson. Officer Gary Price brought K. M. to the scene, and she positively identified Jackson. En route to the police station, Jackson told Officer Gregory Elder that he had been at his mother's home during the time period in question. However, C. T.'s shoes were recovered from his car, and her underwear was found at the crime scene.

The nurse who performed the sexual assault examination of C. T. testified that C. T. had two scratches on her neck consistent with her description of the manner in which Jackson had subdued her physically. The nurse took swabs of her external genitalia and breasts and from inside her vagina. GBI crime lab forensic biologist Clint Buchanan testified that he had found the presence of amylase, a saliva enzyme, on the external genitalia swabs. At the first trial, GBI crime lab forensic biologist Brad Pearson testified that he extracted DNA from blood samples given by C. T. and Jackson, and that all of the DNA from the external genitalia swabs matched C. T.'s DNA, but

none of the DNA matched Jackson's. Pearson, however, testified that this could have been attributable to the fact that amylase lacks sufficient epithelial cells (containing DNA) from which to extract a DNA pattern and thus did not rule out the possibility that the saliva was Jackson's. At the second trial, Buchanan provided essentially the same testimony he and Pearson had given at the first. Officer Cheryl Clark, who interviewed Jackson, testified that he initially said that he knew nothing about the incident and had been home all night. After being informed that C. T.'s shoes had been found in his car, Jackson admitted that he had not been home all night but denied having raped C. T.

At the first trial, Jackson denied that he had been at the Sports Zone on the evening in question, but he admitted that he had been at Big Daddy's. He claimed that C. T. had approached him at Big Daddy's and that she was angry with him because of an incident the night before involving her other sister, K. T. He denied having any other contact with C. T. that night.

1. Jackson charges his trial lawyer with ineffective assistance on numerous grounds not asserted in his motion for new trial, and he charges the attorney who represented him at the hearing on the motion for new trial with ineffective assistance in failing to raise these other grounds. Each of these ineffectiveness claims falls into one of three categories.

(a) The record affirmatively shows certain of the claims to be without merit. For instance, Jackson now charges his trial lawyer with ineffective assistance in failing to call State Crime Lab forensic biologists Buchanan and Pearson as witnesses at the second trial. The record, however, shows that Buchanan was called as a witness at the second trial and gave basically the same testimony provided by both biologists at the earlier trial. Jackson also complains that counsel was ineffective at the second trial in failing to show that although Jackson's car had been processed for fingerprints, C. T.'s fingerprints had not been found. That complaint is without merit. At the second trial, evidence was introduced showing that Jackson's car had been processed for fingerprints, and no evidence identifying any of the fingerprints as C. T.'s was presented. Jackson complains of his trial attorney's failure to object at the second trial to the reading of his testimony from the first trial. But we have held that "our law clearly authorizes reading such testimony."[1]

---

[1] *Spruell v. State*, 237 Ga. App. 448, 453 (6) (514 SE2d 896) (1999). While testifying at his first trial, Jackson admitted, contrary to what he had told Officer Elder, that he had been at Big Daddy's on the evening in question and had talked to C. T. there. Under long-standing rules of evidence, his prior testimony was thus admissible as an admission. See *United States v. Grunewald*, 164 FSupp. 644 (S.D. N.Y. 1958), cited approvingly in *Edison v. State*, 256 Ga. 67,

(b) Other ineffectiveness claims by Jackson relate to matters such as his attorney eliciting testimony from him showing that he had an alibi without presenting alibi witnesses, counsel's failure to pose certain questions to C. T. on cross-examination, and counsel's failure to object to certain comments by the prosecutor concerning facts not in evidence. Those actions by counsel could have been strategic,[2] and are thus presumed strategic in the absence of testimony to the contrary.[3] No such testimony was presented.

(c) Jackson's claims of inconsistencies in the time lines testified to by some of the investigating officers are not supported by the record. Similarly without record support are Jackson's claims of material inconsistencies between the testimony he actually gave in the first trial and the testimony that was read to the jury at the second trial.

2. Jackson contends that the trial court erred in failing to instruct the jury on how to analyze the statements of a defendant, after informing the jury during the course of the trial that it would do so. Jackson, however, has not identified any pertinent jury instruction that was omitted. Therefore, he has not shown how he was harmed by the court's comment or by the jury charge given.

3. In reliance on OCGA § 17-8-75, Jackson contends that the court erred in failing to take any corrective action when the prosecuting attorney alluded to facts not in evidence while questioning C. T. during the second trial.

Under OCGA § 17-8-75, "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same." But in order to secure appellate review of a purported violation of this statute, it is necessary to object in the trial court to the allegedly prejudicial comment at the time it is made.[4] Here, no objection was made. Jackson's claim that counsel was ineffective for failing to object has already been found to be without merit.[5]

---

69 (3) (344 SE2d 231) (1986). *Cantrell v. Byars*, 71 Ga. App. 287 (30 SE2d 643) (1944), relied on by Jackson, did hold that where a witness is present in the courtroom his former testimony is inadmissible. *Cantrell*, however, was effectively overruled by *Park v. State*, 225 Ga. 618 (170 SE2d 687) (1969) (holding that where a witness is present in the courtroom but refuses to testify, the witness is inaccessible within the meaning of OCGA § 24-3-10 and his former testimony is admissible).

[2] *Myers v. State*, 275 Ga. 709, 714 (4) (572 SE2d 606) (2002) (determination of which witnesses to call and extent of cross-examination are strategic and tactical decisions within exclusive province of attorney after consultation with client).

[3] See *Jackson v. State*, 243 Ga. App. 289, 291-292 (3) (a) (531 SE2d 747) (2000) (counsel's decision not to pursue alibi defense presumed strategic).

[4] *Dix v. State*, 246 Ga. App. 338, 340 (2) (540 SE2d 294) (2000).

[5] See Division 1 (b), supra.

4. Jackson complains of the trial court's failure to take any corrective action when the prosecutor made comments during closing argument concerning Jackson's failure to produce alibi witnesses he had mentioned in his testimony. We find no merit in this complaint, as the prosecutor's comments were not objectionable.[6]

5. Finally, Jackson challenges the sufficiency of the evidence to support his convictions of aggravated sexual battery and aggravated sodomy.

"A person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object the sexual organ . . . of another person without that person's consent. The term 'foreign object' includes not only inanimate instruments, but also a person's body parts, such as a finger."[7] "A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth . . . of another. A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person. . . ."[8]

As recognized in cases such as *Susan v. State*,[9] the standard of review for the sufficiency of evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and thus do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[10] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve; and as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld. Adjudged by these principles, the evidence clearly authorized the jury to find Jackson guilty of aggravated sodomy and aggravated sexual battery beyond a reasonable doubt.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[6] See *Scott v. State*, 274 Ga. 476, 479 (4) (554 SE2d 488) (2001) (proper for counsel to comment on opposing side's failure to produce witnesses who have knowledge of relevant and material facts where argument is derived from properly admitted evidence).

[7] (Footnotes omitted.) *Hardeman v. State*, 247 Ga. App. 503, 504 (2) (544 SE2d 481) (2001).

[8] OCGA § 16-6-2 (a).

[9] 254 Ga. App. 276, 277 (1) (562 SE2d 233) (2002).

[10] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

DECIDED DECEMBER 9, 2004 —
RECONSIDERATION DENIED JANUARY 21, 2005 —

*Marci G. Shein*, for appellant.
*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Assistant District Attorney*, for appellee.