S10A1643. PINEDA v. THE STATE.

(706 SE2d 407)

HINES, Justice.

Narcisco Pascacio Pineda appeals his convictions for malice murder and possession of a firearm during the commission of felonies, in connection with the deaths of Mario Molina, Leonel Lara Vazquez ("Vazquez"), Prisca Rosales Vazquez ("Prisca"), and the unborn child of Prisca Rosales Vazquez. For the reasons that follow,

---

we affirm in part and vacate in part.[1]

Construed to support the verdicts, the evidence showed that Pineda and Vazquez had a history of disagreements. On Thanksgiving evening, there was an outdoor social gathering at Vazquez's home in a mobile home park. Pineda and Molina argued, and Vazquez asked Pineda if he had come to start new arguments or settle old ones. Pineda said "I'm going to kill you" and that he would "finish" them; he produced a pistol, and shot Molina once. He then began to shoot at Vazquez, striking him nine times; he attempted to shoot a bystander, and shot Prisca once; she was pregnant. Molina, Vazquez, and Prisca died as a result of their wounds, and Prisca's unborn child died as a result of Prisca's death. Pineda's son was also shot in the leg.

1. Pineda contends that the evidence was insufficient to support his conviction and sentence for the crime of malice murder in causing the death of Prisca's unborn child. He is correct. Under OCGA § 16-5-1 (a), "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." The only evidence was that the unborn child was alive solely in the mother's uterus, died due to the death of the mother, and never had an independent circulation or other evidence of independent existence. See *Shedd v. State*, 178 Ga. 653 (173 SE 847) (1934). Accord *Ranger v. State*, 249 Ga. 315, 317 (1) (290 SE2d 63) (1982); *Logue v. State*, 198 Ga. 672 (32 SE2d 397) (1944). Thus, there was no evidence presented that Pineda committed the crime of malice murder of Prisca's unborn child.[2] Accordingly, the judgment of conviction and sentence for that

---

[1] The crimes occurred on November 26, 1998. On December 8, 1998, a Columbia County grand jury indicted Pineda for: Count 1 – malice murder of Mario Molina; Count 2 – felony murder of Mario Molina during the commission of aggravated assault; Count 3 – malice murder of Leonel Lara Vazquez; Count 4 – felony murder of Leonel Lara Vazquez during the commission of aggravated assault; Count 5 – malice murder of Prisca Rosales Vazquez; Count 6 – felony murder of Prisca Rosales Vazquez during the commission of aggravated assault; Count 7 – malice murder of the unborn child of Prisca Rosales Vazquez; Count 8 – felony murder of the unborn child of Prisca Rosales Vazquez during the commission of aggravated assault; and Count 9 – possession of a firearm during the commission of the crimes of murder. On December 10, 1998, the State filed a notice of its intent to seek the death penalty. Pineda was tried before a jury September 7-18, 1999, and found guilty of all charges. On October 21, 1999, the trial court sentenced Pineda to consecutive terms of life in prison without the possibility of parole for the malice murders of Mario Molina, Leonel Lara Vazquez, and Prisca Rosales Vazquez, a consecutive term of life in prison for the malice murder of the unborn child of Prisca Rosales Vazquez, and a consecutive term of five years in prison for possession of a firearm during the commission of the crimes of murder; the verdicts of guilty for the crimes of felony murder stood vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). On November 16, 1999, Pineda filed a motion for a new trial, which was denied on May 5, 2009. Pineda filed a notice of appeal on May 14, 2009, his appeal was docketed in the January 2011 term of this Court, and submitted for decision on the briefs.

[2] Pineda was not charged with the crime of feticide. See OCGA § 16-5-80. See also *Ranger*, supra.

crime must be vacated.

The evidence was sufficient to enable a rational trier of fact to find Pineda guilty beyond a reasonable doubt of all of the other crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, the State provided notice pursuant to Uniform Superior Court Rules ("USCR") 31.1 and 31.3 that it intended to introduce evidence that, in August 1998, Pineda and his son went to the mobile home park where the killings took place, and Pineda threatened Crispin Mendez by pointing a pistol at him. At trial, Mendez testified that Pineda asked to buy a beer, Mendez said that he did not operate a store, Pineda pointed a pistol at him, and said he was going to kill him. The State then asked, over objection, whether there was "another occasion" during which Pineda threatened him, and Mendez testified that Pineda sought him out, displayed a pistol under his shirt, and asked if Mendez was "still brave."

Pineda asserts that his motion for mistrial should have been granted because the testimony regarding Pineda's query whether Mendez was "still brave" was beyond the scope of the pre-trial notice. First, it is not clear from Mendez's testimony whether Pineda's display of his pistol and his query whether Mendez was "still brave" was so closely tied to Pineda's act of pointing his pistol at Mendez that the notice provided sufficient particulars of the incident such that Pineda's defense could not have been harmed by the failure to provide more specific information. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (3) (489 SE2d 840) (1997). In any event, the evidence was essentially cumulative of Mendez's testimony that Pineda pointed a pistol at him, and it is highly probable that it did not contribute to the verdicts, given the weight of the evidence implicating Pineda in the crimes. See *Patterson v. State*, 285 Ga. 597, 599 (3) (679 SE2d 716) (2009); *Lampley v. State*, 284 Ga. 37, 40 (4) (663 SE2d 184) (2008).

3. Pineda filed his motion for new trial on November 16, 1999; the order denying that motion was filed on May 5, 2009. Pineda argues that this delay in his post-conviction review violated his rights to due process.

This Court has addressed the proper resolution of claims asserting due process violations based on inordinate appellate delay, and determined that the appropriate analysis is application of the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to

the defendant. *Chatman v. Mancill*, 280 Ga. 253, 256 (2) (a) (626 SE2d 102) (2006).

*Browning v. State*, 283 Ga. 528, 531 (2) (b) (661 SE2d 552) (2008). Although Pineda advances cursory arguments regarding each of the four factors, as the trial court noted, he provides no evidence of prejudice arising from the delay, but only speculates that if a new trial were granted, some witnesses may not be available. In addition to Pineda's failure to introduce evidence regarding any such witnesses, he does not advance any argument that the appeal he now pursues has been hampered by the delay in any way. See *Chatman*, supra at 262-263 (2) (e). It was not error for the trial court to deny Pineda's motion for new trial on the ground of inordinate appellate delay.

4. Finally, Pineda claims that he was not afforded the effective assistance of counsel because his attorneys did not secure an interpreter who was able to keep him apprised of what was occurring at trial; it is uncontroverted that Pineda speaks only Spanish. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, Pineda must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

At the commencement of the trial, Kosar was sworn as an interpreter and instructed by the court to relate accurately and correctly to Pineda all that transpired in the courtroom; Pineda stated that he had no problem understanding Kosar, and that he understood what was transpiring. A second interpreter ("second interpreter")[3] was sworn to provide translations for witnesses who

---

[3] This interpreter also had the last name of Pineda.

testified in Spanish. On the morning after the State rested its case, interpreter Kosar did not appear in the courtroom. Thomas then testified on behalf of Pineda, in English, to the effect that a witness who had testified for the State had related to Thomas a version of events different from that to which she had testified earlier, namely that Molina had fired the first shot, striking Pineda's son. During Thomas's testimony, the second interpreter assisted Pineda. After Thomas's testimony, Hawk, who grew up in a home in which Spanish was spoken, was married to one of Pineda's attorneys, and had been involved in trial preparation as an interpreter, was sworn as an interpreter and assisted Pineda.[4] At each change of interpreter, Pineda told the court that he was satisfied with the procedure; at no time did he tell the court, or his attorneys, that he did not, or could not, understand what was transpiring;[5] on several occasions he told the court that he was satisfied with the performance of his attorneys. During the hearing on the motion for new trial, Pineda testified that he did not understand "at all" what was going on at trial and could not hear the Spanish-speaking witnesses, but did not know who to inform of these facts, and that he affirmatively answered the trial court's queries as to his satisfaction with his attorneys because he "didn't know if I should say anything except I agree."

Unlike defense counsel in *Ling v. State*, 288 Ga. 299, 302 (1), n. 1 (702 SE2d 881) (2010), Pineda's counsel recognized the need for interpreters and secured them.[6] And, as the trial court noted in its order denying the motion for new trial, Pineda had ample opportunity to inform counsel or the court of any problems with the interpreters, and the fact that he did not do so during the trial hampers him in meeting his burden to show that counsel's performance in securing interpreters to assist him was inadequate. See *Scott v. State*, 275 Ga. 305, 308 (6) (565 SE2d 810) (2002); *Holmes v. State*, 272 Ga. 517, 520 (7) (529 SE2d 879) (2000); *Maldonado v. State*, 284 Ga. App. 26, 33-34 (10) (b) (643 SE2d 316) (2007); *Fennell v. State*, 271 Ga. App. 797, 803 (6) (j) (611 SE2d 96) (2005).[7] The trial

---

[4] Although Pineda asserts that the interpreters used should have been certified and were not, this Court's rules on Use of Interpreters for Non-English Speaking Persons became effective on October 10, 2001, after the date of Pineda's trial. Compare *Ramos v. Terry*, 279 Ga. 889 (622 SE2d 339) (2005). Testimony during the hearing on the motion for new trial was that, at the time of trial, the common practice was for a person fluent in Spanish to be found to assist the defendant if "everybody was satisfied with" the interpreter. No one who served as an interpreter testified at the motion for new trial.

[5] One of Pineda's attorneys spoke "a little Spanish."

[6] The trial court's order denying the motion for new trial noted that Pineda "claimed he worked in construction while in the United States despite not understanding English." At trial, Pineda testified that he had been working in the United States for over 20 years.

[7] Of course, "failure to interpose a timely objection to an interpreter's qualifications constitutes a waiver of the issue on appeal. [Cit.]" *Ramos*, supra.

court did not err in finding that Pineda failed to meet his burden of showing that the performance of his attorneys was deficient. *Strickland*, supra.

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED FEBRUARY 28, 2011.

*Barbara B. Claridge*, for appellant.

*Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.