**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0457. WELDON v. STATE.

MCFADDEN, Judge.

After a jury trial, Brian Weldon was convicted on numerous counts of armed robbery and aggravated assault in connection with a series of restaurant robberies. He argues on appeal that the trial court failed to comply with rules promulgated by the Supreme Court of Georgia regarding the use of non-certified court interpreters at trial, but he did not preserve this claim for appeal. He argues that his trial counsel's failure to object to the use of the interpreters constituted ineffective assistance, but he has not shown he was prejudiced by that failure. Finally, he argues that the trial court erred in failing to rebuke the prosecutor for an improper statement made during closing argument, but, again, he did not preserve this claim for appeal. Accordingly, we affirm.

The state presented evidence at trial that, over the course of several days in March 2007, Weldon participated in the armed robbery of four DeKalb County restaurants. Some of the victims were struck or shot during the robberies. One of Weldon's accomplices testified at trial about Weldon's involvement in the robberies. The state presented similar transaction evidence that Weldon had committed armed robberies in other counties during the same time period. The state also presented evidence that one of the victims was shot with a gun belonging to Weldon. Numerous persons who were at the restaurants at the time of the robberies testified to the circumstances of those crimes. Several of those witnesses did not speak English, and the trial court used Cambodian-, Mandarin-, and Korean-speaking interpreters to translate their trial testimony.

1. *Use of court interpreters.*

Weldon challenges the trial court's use of the three interpreters, because they were not certified interpreters and, he argues, the trial court did not comply with the rules promulgated by the Supreme Court of Georgia for the use of non-certified interpreters.

The Supreme Court has promulgated rules "establishing a statewide plan for the use of interpreters in proceedings involving non-English speakers before any

2

court or grand jury hearing in Georgia." *Ramos v. Terry*, 279 Ga. 889, 891 (1) (622 SE2d 339) (2005). See Use of Interpreters for Non-English Speaking and Hearing Impaired Persons. In *Ramos v. Terry*, supra, the Supreme Court summarized those rules as follows:

> [W]hen a party or witness to a covered proceeding requests an interpreter, the rule on use of interpreters envisage a pre-hearing examination of the non-English-speaking person by the court and appointment of an interpreter upon a judicial determination that the requestor does not understand and speak English well enough to participate fully in the proceeding. A court should make a diligent effort to appoint an interpreter certified by the Georgia Commission on Interpreters; if one is not available, the court is to give preference to a person on the list of registered interpreters.[1] Where . . . neither a certified nor a registered interpreter is available, the court should weigh the need for immediacy in conducting a hearing against the potential compromise of due process, or the potential of substantive injustice, if interpreting is inadequate. If the court decides to proceed with a less qualified interpreter, the court should give the less qualified interpreter specified written or oral instructions on basic rules of interpreting in a judicial setting, and when a non-professional interpreter is used, the

---

[1] Certified interpreters and registered interpreters are defined at Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Appendix B, Powers and Duties of the Georgia Commission on Interpreters, Sec. II. In addition, there is now a category of conditionally approved interpreters who are to be given preference over registered interpreters. Id.

3

court should, on the record, personally verify a basic understanding of the interpreter's role[.] Every interpreter who serves in a Georgia court shall agree in writing to comply with the Code of Professional Responsibility for Court Interpreters.

*Ramos*, 279 Ga. at 891-892 (1) (citations and punctuation omitted). We review a trial court's appointment of an interpreter for abuse of discretion. Id. at 892-893 (1).

Weldon argues that the trial court did not make a diligent effort to appoint certified interpreters (see Commentary to Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Rule I), did not appropriately instruct the interpreters (see Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Appendix A, Sec. II (F)), did not obtain the interpreters' written agreement to comply with the Code of Professional Responsibility for Interpreters (see Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Rule VI (F)), and did not obtain written oaths from the interpreters (see Use of Interpreters for Non-English Speaking and Hearing Impaired Persons, Rule VI (B)).

It is an abuse of discretion for a trial court to

appoint someone to serve as an interpreter who is neither certified nor registered [nor conditionally approved] as an interpreter without ensuring that the person appointed is qualified to serve as an interpreter, without apprising the appointee of the role s/he is to play, without

4

verifying the appointee's understanding of the role, and without having the appointee agree in writing to comply with the interpreters' code of professional responsibility.

*Ramos*, 279 Ga. at 893 (1). But we need not decide whether the trial court in this case abused her discretion in this manner, because Weldon acquiesced in the trial court's use of the interpreters by failing to object to any of the interpreters and by expressly stating that he was "satisfied" with the use of two of the three interpreters. Consequently, as did the appellant in *Ramos*, supra, Weldon has waived on appeal the issue of the trial court's failure to comply with the rules governing the use of non-certified interpreters. See *Ramos*, 279 Ga. at 893 (2). Accord *Cruz v. State*, 305 Ga. App. 805, 808 (2) (700 SE2d 631) (2010); *Duran v. State*, 274 Ga. App. 876, 880 (4) (619 SE2d 388) (2005). "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." *Compton v. State*, 281 Ga. 45, 46 (2) (635 SE2d 766) (2006) (citation and punctuation omitted).

2. *Ineffective assistance of counsel.*

Weldon argues that his trial counsel's failure to object to the interpreters constituted ineffective assistance. To prevail on this claim, Weldon "must show both

that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." *Pineda v. State*, 288 Ga. 612, 615 (4) (706 SE2d 407) (2011) (citations omitted). "[A]n insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong." *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004) (citation and punctuation omitted). In reviewing the trial court's ruling on the ineffective assistance claim, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Pineda*, 288 Ga. at 615 (4) (citation and punctuation omitted).

In this case, Weldon has made an insufficient showing on the prejudice prong. He speculates that parts of the interpretations were incorrect, but has not provided a correct interpretation of that testimony. He also criticizes the professionalism of an interpreter who interpreted a statement made by a similar transaction witness as the witness was leaving the stand, leading to the state recalling the witness and obtaining additional testimony about the similar transaction that was favorable to the state. But the witnesses requiring interpreters were only a part of the state's case against Weldon. The state also presented testimony from victims and similar transaction witnesses who did not require interpreters, and it presented testimony from police

6

officers and Weldon's accomplice tying him to the crimes. Under these circumstances, Weldon has not shown that "there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different." *Pineda*, 288 Ga. at 615 (4) (citation omitted). See also *Holliday v. State*, 263 Ga. App. 664, 669 (588 SE2d 833) (2003) (finding no merit in claim of ineffective assistance for failure to obtain independent interpreter to translate victims' trial testimony where evidence of defendant's guilt was overwhelming and evidence did not affirmatively show that any translation problems harmed defendant).

3. *Closing argument.*

Weldon argues that the trial court erred by not rebuking the prosecutor for a statement made during closing argument. Immediately beforehand, the trial court had sustained Weldon's objection that the prosecutor had misstated the law regarding similar transactions. When the trial court instructed the prosecutor to "clarify," the prosecutor stated:

> Look. I will not be shut down. The truth has to be heard. Someone has to bring you the truth. That's my job; that's [co-counsel's] job. We represent the [s]tate, the people of DeKalb County, in particular, you folks. You have to consider the evidence in this case[.]

7

Weldon argues that OCGA § 17-8-75 required the trial court to rebuke the prosecutor for this statement on the ground that it was prejudicial. OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. *On objection made*, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

(Emphasis supplied.) OCGA § 17-8-75 "only requires the judge to act where counsel makes a timely objection." *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) (citation omitted).

Although Weldon claims that he objected to the allegedly prejudicial statement, the record shows that he did not do so. Instead, he objected – successfully – to an earlier statement made by the prosecutor that misstated the law. To the extent that the prosecutor failed to "clarify" his prior misstatement of the law or otherwise defied the trial court's earlier ruling, the trial court was authorized to rebuke the prosecutor. But because Weldon did not object to the prosecutor's statement that followed the trial court's ruling, he did not preserve for review his claim that the trial court was

8

*required* to rebuke the prosecutor for that statement. See *Jackson v. State*, 271 Ga. App. 317, 320 (3) (609 SE2d 643) (2004).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*