**E-FILED**
**CNMI SUPREME COURT**
E-filed: Sep 29 2023 05:19PM
Clerk Review: Sep 29 2023 05:19PM
Filing ID: 70985183
Case No.: 2022-SCC-0004-CRM
NoraV Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Plaintiff-Appellee,*

*v.*

**SHABGUA ZHANG (AKA SHAN GUO ZHANG),**
*Defendant-Appellant.*

**Supreme Court No. 2022-SCC-0004-CRM**

---

**SLIP OPINION**

**Cite as: 2023 MP 9**

Decided September 29, 2023
_____

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS
_____

Superior Court Criminal Action Nos. 21-0115-CR & 20-0197-CR
Associate Judge Joseph N. Camacho, Presiding
_____

CASTRO, CJ.:

¶ 1    Defendant-Appellant Shabgua Zhang ("Zhang") appeals his conviction for vandalism in Criminal Case No. 21-0115 and probation revocation in Criminal Case No. 20-0197. For the following reasons, we AFFIRM Zhang's conviction and sentence for vandalism. We DISMISS the appeal of his probation revocation for lack of jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    This appeal involves two independent criminal cases. In March 2021, Zhang pleaded guilty to tampering with a vehicle, in violation of 9 CMC § 7103. He received a suspended sentence of six months and was placed on probation for the same duration.

¶ 3    Three months later, Zhang attempted to retrieve personal belongings he believed were being held in the Ports Police Office at the Saipan International Airport. Zhang's primary language is Chinese and he does not speak English. English-speaking Ports Police Officer Jason Cruz ("Officer Cruz") approached Zhang and tried to communicate and demonstrate to him that he must wear a mask to enter the office.[1] After the two talked back and forth in their respective languages, Zhang put on a mask. He then picked up a rock and hit the office window, damaging the plexiglass.

¶ 4    Zhang was arrested, and the Commonwealth charged him with one count of vandalism under 6 CMC § 1805(a) and one count of disturbing the peace under 6 CMC § 3101(a). Because he was serving a probation sentence in Criminal Case No. 20-0197 at the time, the Commonwealth moved to revoke probation for violating a condition of his probation—specifically, to obey all CNMI laws. The bench trial for the vandalism charge also served as the revocation hearing. The same court-qualified Chinese-English interpreter provided simultaneous oral interpretation during the trial and at sentencing, and orally translated court documents. During the bench trial, Zhang admitted to breaking the window and conceded to the court that he had committed vandalism.

¶ 5    The court found Zhang guilty of vandalism but acquitted him of disturbing the peace. Based on the vandalism conviction, the court also found he violated a condition of his probation. On October 20, 2021, the court issued its Judgment of Conviction and Finding of Probation Violation/Imposition of Sentence ("JCO") for both Criminal Case Nos. 21-0115 and 20-0197. In the JCO, the court revoked probation and immediately imposed the suspended sentence. On February 2, 2022, the court sentenced Zhang on the vandalism conviction. Zhang filed a notice of appeal for the vandalism conviction and the probation revocation on March 2, 2022.

---

[1]    Officer Cruz testified during the bench trial that all persons on airport premises were required to wear a face mask.

## II. JURISDICTION

¶ 6    The Supreme Court has jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art IV, § 3.

## III. DISCUSSION

¶ 7    Zhang appeals both his probation revocation and conviction. Zhang's probation was revoked in October 2021, and his previous sentence was immediately reimposed by the court. The court later sentenced Zhang on the vandalism conviction in February 2022. The Commonwealth objects to Zhang's appeal of his probation revocation, since his notice of appeal of the probation revocation was filed more than 30 days after his probation was revoked. Resp. Br. at 4. When properly invoked, Supreme Court Rule 4(b)(1)(A)—requiring that a notice of appeal in a criminal case be filed within 30 days of the judgment or order—is "mandatory and jurisdictional." *Commonwealth v. Borja*, 2015 MP 8 ¶ 19 (quotation omitted). Because the Commonwealth has properly raised the timeliness of the appeal, we do not have jurisdiction to consider the probation revocation in Criminal Case No. 20-0197.[2]

¶ 8    Zhang raises four issues on appeal, all for the first time: (1) federal law preempts the vandalism charge under 6 CMC § 1805(a) that occurred at the Saipan International Airport; (2) the crime of vandalism in Section 1805(a) is an unconstitutional strict liability crime; (3) he was not afforded a fair trial; and (4) the trial court violated his due process rights by not providing written translation in the course of trial proceedings. This Court will not consider a new issue unless it applies to one of the following narrow exceptions:

> (1)  a new theory or issue has arisen due to a change in the law while the appeal was pending,
> (2)  the issue is only one of law not relying on any factual record; or
> (3)  plain error has occurred and an injustice might otherwise result if the appellate court does not consider the case.
>
> *Saipan Achugao Resort Members' Assoc. v. Yoon*, 2011 MP 12 ¶ 78.

As to each issue, we first examine whether any of these exceptions apply, and if so, we will address the issue on its merits in turn.

---

[2]    Even if Zhang had timely appealed the probation revocation, his appeal would have been waived for failure to argue the issue. Despite noting the facts of his probation revocation in his opening brief, Zhang fails to assert any argument related to the revocation. By providing the Court with no legal argument, he does not fully develop this matter. "An issue is insufficiently developed when the party's principal brief fails to 'provide legal authority or public policy, or apply the facts of the case to the asserted authority in a non-conclusory manner.'" *Commonwealth v. Ogumoro*, 2020 MP 8 ¶ 13 n.5 (citations omitted). We have the discretion to decline review of insufficiently developed arguments, and may consider them waived. *Kim v. Baik*, 2016 MP 5 ¶ 30.

*A. 6 CMC § 1805(a) Is Not Preempted by Federal Law*

¶ 9     Zhang alleges that 18 U.S.C. § 37, criminalizing violence at international airports, preempts 6 CMC § 1805(a). This is an issue only of law not relying on any factual record. *Yoon*, 2011 MP 12 ¶ 78. We consider the issue and review de novo. *Id.*; *Commonwealth v. Minto*, 2011 MP 14 ¶ 16.

¶ 10     Preemption, the primacy of federal over state laws, derives from the Supremacy Clause of the U.S. Constitution. *See* U.S. CONST. art. VI, cl. 2; *Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1418 (9th Cir. 1995); *Commonwealth v. Bashar*, 2018 MP 11 ¶ 22. Only provisions of the U.S. Constitution defined by the Covenant will apply in the Commonwealth. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 48 U.S.C. § 1801 note. Because the Supremacy Clause is not defined as such, it is not applicable on its own. *Bashar*, 2018 MP 11 ¶ 22. However, Section 503 of the Covenant grants Congress the authority to pass laws and make them applicable to the Commonwealth. Covenant § 503 (48 U.S.C. § 1801 note). Congress exercised such authority when it defined the Commonwealth as one of the states to which 18 U.S.C. § 37 applies. 18 U.S.C. § 31(a)(9). Under the provisions of the Covenant, Section 37 can preempt Commonwealth law. We must analyze whether Section 37 does preempt 6 CMC § 1805.

¶ 11     There is a strong presumption that federal law does not preempt state law unless Congress clearly manifests such intention through explicit language contained in the statute's structure and purpose. *Stevedoring Servs. v. Eggert*, 914 P.2d 737, 741 (Wash. 1996). "The ultimate purpose in any preemption analysis is to determine whether state regulation is inconsistent with a federal law." *Wells Fargo v. Apache Tribe*, 360 P.3d 1243, 1265 (Okla. Ct. App. 2014). In sum, federal law preempts state law if: (1) federal law expressly preempts state law, (2) federal law occupies the entire field of regulation, or (3) state law conflicts with federal law to the degree that compliance with both is impossible or "state law presents an obstacle to the accomplishment of the federal purpose." *Stevedoring Servs.*, 914 P.2d at 740–41.

¶ 12     There is no explicit language in 18 U.S.C. §§ 31 or 37 indicating that Congress intended violence at international airports to be exclusively under federal jurisdiction. Statutory interpretation requires we follow the plain language of the statute. *Albia v. Duenas*, 2022 MP 3 ¶ 7. Subsection (b)(1) of 18 U.S.C. § 37 states "[t]here is jurisdiction over the prohibited activity in subsection (a) if the prohibited activity takes place in the United States."[3] While the plain language of 18 U.S.C. § 37 grants federal jurisdiction, it is devoid of any language that state law is preempted. Preemption language is found in other federal statutes, such as 48 U.S.C. § 1806(f) regarding immigration: "[t]he provisions of this section . . . shall, on the transition program effective date,

---

[3]     "United States" is further defined in 18 U.S.C. § 31(a)(9), in relevant part, as "any commonwealth, territory, or possession of the United States."

*supersede and replace* all laws, provisions, or programs of the Commonwealth relating to the admission of aliens and the removal of aliens from the Commonwealth." 48 U.S.C. § 1806(f) (emphasis added). [4] Absent express language indicating that federal law preempts state law, states retain their jurisdiction. Section 37 does not expressly preempt Commonwealth criminal law.

¶ 13    We turn to the second principle of preemption analysis: whether federal law occupies the entire field of regulation on violence in international airports. A federal law preempts state law when it "occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018) (internal quotations omitted). When a federal statute provides such dense and detailed regulations that "any state regulation within the same field" would necessarily interfere, Congress intended to preempt state law. *Id.* (quoting *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 734 (9th Cir. 2016)). We need not look further than the statute itself to find that Congress did not intend for 18 U.S.C. § 37 to be the only control of violent acts in airports. Subsection (c) of Section 37 bars federal prosecution of conduct involving a labor dispute when that conduct is a state felony.[5] Only state prosecution remains possible once federal prosecution is barred under Subsection (c). Had Congress intended to create field preemption for criminal acts in international airports, Subsection (c) would negate this aim. Instead, Congress considered that state criminal laws would apply to actions that also violate this federal law. 18 U.S.C. § 37, based on the content of this subsection, was not intended to occupy the entire field.

¶ 14    Under the third principle of preemption, we examine whether either 18 U.S.C. § 37 conflicts with 6 CMC § 1805(a) to a degree that compliance with both is impossible or the latter presents an obstacle to the federal purpose. *Oneok v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). "[T]he purpose of Congress is the ultimate touchstone" in determining whether state law is preempted by federal. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohri*, 518 U.S. 470, 485 (1996)). Section 37 makes it a federal offense to unlawfully and intentionally perform an act of violence against a person at, or destroy or seriously damage the facilities in, an international civilian airport. 18 U.S.C. § 37(a). Congress added Section 37 to the Federal Death Penalty Act of 1994

---

[4]    *See also Stevedoring Servs.*, 914 P.2d at 741–42 (where the Washington Supreme Court looked at three other federal acts (the Federal Cigarette Labeling and Advertising Act of 1965 and as later amended by the Public Health Cigarette Smoking Act of 1969, the Federal Insecticide, Fungicide, and Rodenticide Act, and the Employee Retirement Income Security Act of 1974) containing language expressing Congress's intent to have federal law preempt state law).

[5]    Subsection (c) specifically states, "It is a bar to Federal prosecution under subsection (a) for conduct that occurred within the United States that the conduct involved was during or in relation to a labor dispute, and such conduct is prohibited as a felony under the law of the State in which it was committed." 18 U.S.C. § 37(c). The statute further describes "State" as including any commonwealth of the United States. *Id.*

after the United Nations agreed "[c]onsidering that unlawful acts of violence which endanger . . . the safety of persons at airports serving international civil aviation or which jeopardize the safe operation of such airports . . . there is an urgent need to provide appropriate measures for punishment of offenders." Protocol for the Suppression of Unlawful Acts of Violence at Airports Serving International Civil Aviation, Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, Feb. 24, 1988, 1589 U.N.T.S. 474 ("Protocol"). When the U.S. became a party to the Protocol, Congress' enactment of 18 U.S.C. § 37 adopted verbatim the Protocol's language. *Id.*; Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103–322, 108 Stat. 1796, 1979–80 (1994). It is obvious that 18 U.S.C. § 37 was intended to deter and punish violent acts at international airports.

¶ 15     The Commonwealth's vandalism statute does not hinder or present an obstacle to 18 U.S.C. § 37's purpose. Rather, criminalizing the act of destroying, damaging or defacing public property further carries out the purpose to deter and punish violent acts at international airports. 6 CMC §§ 103(x), 1805(a). We find that the federal and Commonwealth statutes do not conflict with one another and that compliance with both is possible. Because 6 CMC § 1805(a) does not follow any of the three preemption principles, 18 U.S.C. § 37 does not preempt 6 CMC § 1805(a).

### B. 6 CMC § 1805(a) Is Not a Strict Liability Crime

¶ 16     Zhang next alleges 6 CMC § 1805(a) lacks a mens rea element, resulting in an unconstitutional strict liability crime. Opening Br. at 3. As an issue of law not relying on a factual record, we review it de novo under the second *Yoon* exception to new issues raised on appeal. 2011 MP 12 ¶ 78; *Commonwealth v. Atalig*, 2002 MP 20 ¶ 2.

¶ 17     Section 1805(a) states, "[i]t shall be unlawful for any person and/or persons to vandalize any public or private property." To "[v]andalize" is defined as "the action involving destruction, damage, and/or defacing to public or private property." 6 CMC § 103(x). In the absence of an express mens rea element, we infer general intent. *Commonwealth v. Inos*, 2013 MP 14 ¶ 20; *Atalig*, 2002 MP 20 ¶ 67. Additionally, use of the term "unlawful," as seen in Section 1805(a), "routinely triggers a general intent analysis." *Commonwealth v. Palacios*, 2004 MP 23 ¶ 14. As such, Section 1805(a) creates a general intent crime.

¶ 18     Zhang's reliance on *State v. Blake*, 481 P.3d 521 (Wash. 2021), and *Lambert v. California*, 355 U.S. 225 (1957), to prove Section 1805(a) is a strict liability statute is misplaced. In both cases, the courts were concerned with the criminalization of "innocent and passive conduct with no criminal intent at all." *Lambert*, 355 U.S. at 229; *Blake,* 481 P.3d at 524.[6] We have shared similar

---

6     The Supreme Court of Washington, in *Blake*, declared the illegality of a strict liability felony drug possession statute. 481 P.3d at 530. In *Lambert*, the United States Supreme Court held that criminalizing a person's failure to register with the city of Los Angeles within five days of arrival was an unconstitutional use of police power. 355 U.S. at 229.

concerns for other statutes with unclear intent requirements. *See Commonwealth v. Cabrera Cepeda*, 2009 MP 15 ¶ 42; *Commonwealth v. Camacho*, 2019 MP 2 ¶ 11. There is no such concern here because Zhang's actions clearly present his intent to hit the window with the rock.

¶ 19    General intent crimes require only a finding that the defendant "intended to act, rather than to produce a particular result" through those actions. *Commonwealth v. Tian*, 2019 MP 9 ¶ 19. We can infer his intent from his actions, as described both by himself and a witness. Zhang told the court that he was angry after being denied entry into the Ports Police office to retrieve his belongings and Officer Cruz saw him use the rock to hit the window and damage it. Tr. at 17, 38. This is corroborated by the defendant's concession to the charge of vandalism during trial. Tr. at 26. Zhang's actions outside the Port Police office clearly constitute vandalism as defined by Section 1805(a). 6 CMC § 1805(a) is constitutional in creating vandalism as a general intent crime, and Zhang was correctly convicted for violating the statute.

### C. Zhang Was Afforded a Fair Trial

¶ 20    Zhang's third issue is whether his trial was fair because the court allegedly did not consider all the facts of his case. Opening Br. at 4. This is an issue raised for the first time on appeal and does not meet any of the three discretionary exceptions to the rule that issues raised for the first time on appeal will not be considered. *Yoon*, 2011 MP 12 ¶ 78. Zhang does not rely on a change in the law to support his assertion, nor does he assert that this is an issue of law or an instance of plain error.

¶ 21    Zhang only asserts factual allegations and provides no legal authority for this issue. As with the appeal of his probation revocation, he "fails to analyze this argument and therefore waives it." *Commonwealth v. Ogumoro*, 2020 MP 8 ¶ 13 n.5; *see supra* ¶ 6, n.3. We consider any argument that Zhang was denied a fair trial to be waived.

¶ 22    The Commonwealth responds to this argument by noting that there was sufficient evidence presented at trial for the vandalism conviction. Resp. Br. at 9. We will only disturb the ruling of a lower court upon a "firm and definite conviction that a mistake has been made." *Matsunaga v. Matsunaga*, 2006 MP 25 ¶ 32; *see also In re Buckingham*, 2012 MP 15 ¶ 10. We decline to consider whether Zhang was afforded a fair trial.

### D. Due Process Does Not Require Written Translation in This Case

¶ 23    Lastly, Zhang claims that he was denied due process of law when he was not provided written translation of the trial proceedings and court documents. Opening Br. at 4. He claims simultaneous oral interpretation[7] was insufficient.

---

[7]    An "interpreter is normally understood as one who translates orally from one language to another." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012). The translation of documents is not encompassed by the ordinary meaning of interpretation. *Id.*

*Id.* Because this is an issue he raises for the first time on appeal, we must determine whether it fits any of the three narrow exceptions that warrant this Court's review on the merits. *Yoon*, 2011 MP 12 ¶ 78. First, no change of law has occurred since this appeal was filed, and this is not an issue only of law as facts are needed to determine what translation, if any, was provided. As for the third exception, we must first determine whether plain error has occurred, resulting in an injustice to Zhang.

¶ 24   Plain error review requires a three-part analysis to determine (1) whether there was error; (2) whether the error was plain; and (3) whether such error affected the defendant's substantial rights. *Luan v. PRMC*, 2021 MP 8 ¶ 28. Reversal of a trial court decision on plain error is then only proper if "necessary to safeguard the integrity and reputation of the judicial process or to forestall a miscarriage of justice." *Id.* (quoting *Commonwealth v. Hocog*, 2019 MP 5 ¶ 11). We must first determine whether there was error with the lack of written translation. The right to a written translation stems from the Sixth Amendment right in all prosecutions to be "meaningfully present at one's own trial, to assist in one's own defense, to have effective assistance of counsel and to confront the government's witnesses on cross examination." *United States v. Mosquera*, 816 F. Supp. 168, 172 (E.D. NY. 1993). As this is a constitutional issue, we review de novo. *Commonwealth v. Zhen*, 2002 MP 4 ¶ 10; *In the Matter of Blankenship*, 3 NMI 209, 212 (1992).

¶ 25   Generally, "Due Process does not require that discovery documents be translated into a defendant's native language." *Mendoza v. United States*, 755 F.3d 821, 831 (7th Cir. 2014). A narrow exception to this general rule may exist only in the case of trials that are heavily reliant on discovery documents that do not lend themselves easily to interpretation. *Mosquera*, 816 F. Supp. at 175. The U.S. District Court for the Eastern District of New York alone has held that written translations of court documents are constitutionally required:

> Due process demands that criminal defendants be given the means to understand the charges lodged against them as soon and as fully as practicable. It is fundamental that a defendant must be told what he has been accused of in a language he or she can understand. This is the responsibility of the government, which brought the charges, not of the defendant. For a non-English speaking defendant to stand equal with other before the court requires translation. Non-English speaking criminal defendants currently are at a substantial disadvantage. A criminal defendant cannot aid in his own defense without meaningful access to relevant documents he or she can understand.
> *Id.*

In *Mosquera*, the court concluded that the defendants who pleaded guilty were entitled to written translation of certain documents: indictments, relevant portions of statutes referenced in their indictments, guilty pleas, pre-sentence reports, and other documents that may be ordered by the court. *Id.* at 178.

*Mosquera* was a complex case that involved 18 defendants, some 10,000 documents, more than 550 tape recordings and transcripts, and during one proceeding, only one translator. *Id.* at 170. Importantly, the court held the complexity of the charges and lack of available interpreters to be dispositive in asserting a due process right to written translation of court documents. *Id.*

¶ 26      In *United States v. Gonzales*, the Eighth Circuit distinguished *Mosquera* by reading the case narrowly to hold only that "a court *may* decide to provide written translations in difficult and complicated cases." 339 F.3d 725, 729 (8th Cir. 2003) (emphasis added). Numerous courts have followed or agreed with *Gonzales'* interpretation of *Mosquera*. *See United States v. Celis*, 608 F.3d 818, 841 (D.C. Cir. 2010); *Canizales-Satisbal v. United States*, 73 F.3d 364 n.2 (7th Cir. 1995); *Sanders v. United States*, 130 F. Supp. 2d 447, 449 (S.D.N.Y. 2001); *State ex rel. Children, Youth and Families Dep't v. William M.*, 161 P.3d 262, 271 (N.M. Ct. App. 2007). Indeed, even *Mosquera* itself acknowledges that the trial court decides "the extent and nature of translation services needed by the defendant." 816 F. Supp. at 174 (citing *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986)).

¶ 27      Zhang's case at the trial level was not document-heavy or factually complex enough to demand written translation of documents, as required in *Mosquera*. The evidence brought against Zhang at trial was the sort for which written translation was neither necessary nor practical. Zhang was convicted upon the in-court testimony of one eye witness and two photographs of physical evidence: the broken window and the rock used to break it. Tr. at 4, 7, 9, 41.

¶ 28      We find persuasive the jurisdictions that hold a defendant is entitled to oral interpretation, and not written translation, absent a clear indication that the defendant's other constitutional rights were denied. "[A] criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter to enable him to understand what is said at trial and to communicate with counsel." *Mendoza*, 755 F.3d at 828 (citing *United States v. Johnson*, 248 F.3d 655, 664 (7th Cir. 2001)). Any constitutional right to written interpretation exists on the basis that the defendant cannot be truly present for their trial or assist in their case without such translation. Zhang had consistent and reliable access to a court-qualified interpreter. Indeed, he benefitted from the same interpreter being present for both the bench trial and sentencing. It is clear from the record that he was an active participant and understood the proceedings. Zhang's due process rights were not violated for lack of written translation. We find no error in the trial court's provision of competent, contemporaneous interpretation services to the defendant.

¶ 29     Zhang argues that he should have been provided with a written translation of the court proceedings. Opening Br. at 4. To support this argument, he relies on *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970), and *Ling v. State*, 702 S.E.2d 881, 884 (Ga. 2010). In *Negron*, the Second Circuit granted an application for a writ of habeas corpus from a Puerto Rican man convicted of murder in New York, who had no English ability and his trial lawyer had no Spanish ability. *Negron*, 434 F.2d at 387, 388. No interpreter was consistently assigned, making the defendant largely unable to understand the proceedings. *Id.* at 388. The government admitted that it would have provided a translator had the defendant asked, but the defendant did not know he had such a right. *Id.* at 389–91. The court found the failure to provide consistent interpretation violated the petitioner's Fourteenth Amendment due process rights. *Negron* concluded that when a court is aware of a defendant's language difficulties, it must inform them of the right to a translator. *Id.* at 390–91.

¶ 30     *Negron* does not clearly stand for the proposition that written translations are mandatory; the court said nothing about written translations and focused on the defendant's inability to comprehend what was happening at trial. *Id.* at 388. Zhang's claim that he was entitled to a written translation of trial proceedings and court documents is wholesale distinct from the claim at issue in *Negron*, where lack of consistency in *oral* interpretation formed the basis for the defendant's habeas petition. As such, we find no support in *Negron* for Zhang's appeal.

¶ 31     *Ling* similarly fails to support Zhang's argument that he should have been offered written translation. *Ling* held that a criminal defendant who does not speak English is rendered effectively absent at trial if no interpreter is provided. 702 S.E.2d at 882. Since Zhang was provided an interpreter at trial, *Ling* is inapplicable.

¶ 32     In fact, one year later, the Georgia Supreme Court distinguished the facts of *Ling* from cases in which defendants are provided interpreters. In *Pineda v. State*, 706 S.E.2d 407 (Ga. 2011), the court found that the defendant's due process rights were not violated when his attorney "recognized the need for interpreters and secured them." *Id.* at 411. Several interpreters translated for Pineda at different times throughout his trial, and "[a]t each change of interpreter, Pineda told the court that he was satisfied with the procedure; at no time did he tell the court, or his attorneys, that he did not, or could not, understand what had transpired." *Id.*

¶ 33     The facts of *Pineda* are analogous to the case before us today. The same interpreter was used throughout trial and sentencing, and the interpreter was court qualified and sworn in at the beginning of each proceeding. Zhang himself, through the interpreter, addressed the court. The record is devoid of any evidence that he did not understand what had transpired during his trial and sentencing, he was unable to communicate with his counsel, or had requested a written translation and was denied the service. Zhang did not allege during his trial,

revocation hearing, or sentencing that he was dissatisfied with the oral interpretation.

¶ 34    Moreover, Zhang failed to claim that his substantive rights were injured by the lack of a written translation. In his appeal, he states only that he "might [have made] statements that were not adequately deliberated on," not that he actually made such statements. Opening Br. at 4.

¶ 35    We will not disturb the trial court's ruling absent a showing by the defendant that he was prejudiced by the lack of written translation. *See Luan*, 2021 MP 8 ¶ 28. Without an argument from Zhang that his substantial rights were explicitly violated and without evidence that a miscarriage of justice would result from a finding of no error, we have no cause to find error in the trial court's proceeding. *See Hocog*, 2019 MP 5 ¶ 11. The oral translation provided to Zhang sufficiently afforded him the protection of his Sixth Amendment rights.

## IV. CONCLUSION

¶ 36    We find that the trial court had proper jurisdiction because federal law does not preempt 6 CMC § 1805(a). Zhang was properly convicted for vandalism as a general intent crime. To the extent that Zhang did not raise concerns about the fairness of his trial with the court below, his arguments are waived. The oral interpretation provided for Zhang at trial did not violate his due process rights. For the foregoing reasons, we AFFIRM the conviction and sentence.

SO ORDERED this 29th day of September, 2023.

/s/
ALEXANDRO C. CASTRO
Chief Justice

/s/
JOHN A. MANGLOÑA
Associate Justice

/s/
PERRY B. INOS
Associate Justice

COUNSEL

Shabgua Zhang, Pro Se Appellant.

Cong Nie, Saipan, MP, Standby Counsel for Appellant.

J. Robert Glass, Jr., Saipan, MP, for Appellee.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Sep 29 2023 04:57PM
Clerk Review: Sep 29 2023 04:58PM
Filing ID: 70985179
Case No.: 2022-SCC-0004-CRM
NoraV Borja





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Plaintiff-Appellee,*

***v.***

**SHABGUA ZHANG (AKA SHAN GUO ZHANG),**
*Defendant-Appellant.*

---

**Supreme Court No. 2022-SCC-0004-CRM**
Superior Court Nos. 21-0115-CR & 20-0197-CR

**JUDGMENT**

Defendant-Appellant Shabgua Zhang ("Zhang") appeals his conviction for vandalism and sentence in Criminal Case No. 21-0115 and probation revocation in Criminal Case No. 20-0197. For the reasons discussed in the accompanying opinion, the Court AFFIRMS Zhang's conviction and sentence for vandalism, and DISMISSES the appeal of his probation revocation for lack of jurisdiction.

ENTERED this 29th day of September, 2023.

 /s/ _____
JUDY T. ALDAN
Clerk of the Supreme Court